Blair, (to use, Appellant) *v.* Adamchick et al.

Argued April 16, 1941.

Before KELLER, P. J., CUNNINGHAM, BALDRIGE, STADTFELD, RHODES, HIRT and KENWORTHEY, JJ.

*Roger B. Johnson,* with him *Myron W. Jones,* for appellant.

*Joseph H. Broscoe,* for appellee.

OPINION BY STADTFELD, J., July 2, 1941:

Louis Davis, doing business as Sharon Auto Finance Company, was owner of a certain auto which was leased to John Adamchick, under bailment lease of usual form. On Saturday, October 25, 1937, the car was wrecked in an accident while in possession of Adamchick. After the car was wrecked, Adamchick contacted plaintiff, the owner, on the Monday following and told him he had no more money and could pay nothing further on the

car, and that he had delivered the car to Grimaldi's Garage in Farrell; plaintiff came to Grimaldi's Garage and viewed the car. A short time afterwards, a representative of the insurance company in which plaintiff had insured his interest in the car, came to the garage and had an estimate made of the cost of the repairs; subsequently, repairs were started. The amount of the estimated cost of the repairs, less $50 deductible, was paid by the insurance company to plaintiff.

The car was removed from Grimaldi's Garage to the Penn Auto Body Company, a company which specializes in the type of repairs required. While the repairs were being done at this latter place, and before the same were completed, plaintiff was again advised as to the location of the car and the progress of the work. In fact, the plaintiff personally called the Penn Auto Body Company to inquire about the progress of the repairs and was advised that some additional parts were required before the same could be completed.

After the car was completely repaired and ready for delivery, the plaintiff advised the Penn Auto Body Company that he had no place to store the same for a few days, but did not deny liability for repairs. Subsequently, the plaintiff refused to pay for the same and the defendant, Penn Auto Body Company, held the car as security for its claim. The plaintiff then filed an action of replevin, furnished bond, and took the car into his possession. The plaintiff, therefore, received the car fully repaired and also the amount of the estimated costs of repairs from the insurance company.

A point ex parte plaintiff for binding instructions, was refused. The case was submitted to the jury in a fair and comprehensive charge to which no exception was taken. The jury found the right of possession in plaintiff on the condition that he pay to Penn Auto Body Company, of defendants, the repair bill of $246.90. A motion for judgment non obstante veredicto in favor of plaintiff was overruled and judgment entered in ac-

cordance with the verdict. This appeal by plaintiff followed.

Upon a motion for judgment n. o. v., the testimony must be read in the light most favorable to the party who has the verdict, and he must be given the benefit of every inference that can be reasonably drawn from the facts established. If there is any evidence at all to sustain the inference drawn by the jury, the court may not substitute its inference for the jury's verdict, notwithstanding that the trial judge sitting as a juror would have found the facts contrary to the conclusion of the jury: *Kish v. Penna. R. R.*, 309 Pa. 439, 164 A. 341; *Stevenson et al. v. Sarfert*, 310 Pa. 458, 165 A. 225; *Mitchell et al., Admrs., v. Dunn, Admxr.*, 312 Pa. 276, 167 A. 774.

"In order to charge a chattel with a lien for labor, it must have been done at the request of the owner or under circumstances from which his assent can be reasonably implied": *Bankers Commercial Security Co., Inc. v. Brennan & Levy*, 75 Pa. Superior Ct. 199.

There is no evidence that any express direction for repairs were given by plaintiff. Plaintiff further contends that there was no evidence of "circumstances from which his assent can be reasonably implied."

Quoting from the opinion of the court below, "Two days after the accident the lessee disclaimed any further interest in the automobile. Davis visited the Grimaldi Garage, and thereafter notified the insurance carrier. The insurance adjuster contracted for the repairs and thereafter paid Davis what the insurer and the owner seemed to agree was the amount payable under the policy. Before the repairs were completed Davis telephoned to Penn Auto Body Co. and inquired how the repairs were progressing. The fact that he did not then prohibit repairs is a circumstance tending to indicate to some extent his assent to the repairs. ......
The jury apparently believed that Davis was cognizant of the disposition of the car after he had seen it in the

Grimaldi Garage. This inference is supported somewhat by his subsequent inquiry about the repairs. The damaged car was in the repair shop more than five weeks before the repairs were completed. Doubtless it seemed to the jury unlikely that Davis was indifferent to or unaware of the custody of his property during this period. When the repair bill was presented to Davis by Nespor, the former declared he did not have room for the car and desired that it remain in the repair shop for a time. No claim was then made by Davis that he had not authorized the repairs. It is improbable that Davis settled his claim for insurance without knowledge of the estimated cost of the repairs. The only evidence as to the cost of the repairs was the estimate prepared for the insurance adjuster by defendant's firm. This circumstance strengthens the inference that Davis knew that the car was removed from the Grimaldi Garage for repairs."

It is also an uncontroverted fact that he eventually knew that his car was transferred from Grimaldi's Garage to Penn Auto Body Company and knew, according to the evidence, during all of this time, that Adamchick had no money, either to make the repairs or to carry out his contract for the purchase of the car.

It is a testified fact that plaintiff knew that the car was being repaired before the repairs were completed, and did not stop the repairs nor disclaim liability for the repairs already done. The facts show further that he not only accepted benefits of defendant's labor and materials, without paying for them, but also accepted money from the insurance company with which such benefits should have been paid.

After a careful consideration of the entire record, we cannot say that there was no evidence to submit to the jury. We believe that it would have been error to have withdrawn the case from the consideration of the jury.

The assignments of error are overruled and the judgment of the court below is affirmed. Costs to be paid by appellant.