## Lewis v. Smith

*Roger P. Legg,* for plaintiffs.
*C. R. Morton,* for defendant.

SUGERMAN, *J.,* April 5, 1976 — Plaintiffs, trustees in bankruptcy for the Reading Company (Reading), filed an action in replevin seeking a judgment for possession of one 1973 Chevrolet pick-up truck. Defendant, by answer, asserts a possessory lien in the vehicle for the storage thereof,[1] and with the issue so joined, the matter

1. Defendant also counterclaimed to recover storage charges. Both the answer and counterclaim were served on Reading on the day fixed for trial, without an opportunity to reply to the counterclaim. Accordingly, the parties agreed to limit the instant proceeding to the single issue of plaintiffs' right to possession; c.f. Pa. R. C. P. 1085(b) (eff. Oct. 1, 1975).

was tried by a judge sitting without a jury: Pa. R. C. P. 1097 (eff. Oct. 1, 1975) and 1038, limited to the question of Reading's right to the possession of the vehicle.

## FINDINGS OF FACT

1. Sometime prior to July, 1973, Reading leased a 1973 Chevrolet pick-up truck from the owner thereof, a leasing company identifed at trial as "Executive Rentals" (Executive); the truck was assigned to a Reading employe, and in accordance with company policy the employe was permitted to retain the truck in his possession and drive it to and from his home to Reading's shop.

2. On an unknown date in July, 1973, the truck was stolen from the home of Reading's employe in Berks County, Pennsylvania, and within a matter of hours, the theft was reported by the employe to Reading and to the appropriate Berks County Police Department.

3. In October, 1973, a little more than two months following the theft, an informant advised Trooper Cloud of the Pennsylvania State Police, assigned to the Avondale Barracks, that the truck was in Parkesburg in this county, and may have been used by some persons involved in thefts of various kinds of mechanical equipment in Southern Chester County.

4. On October 3, 1973, Trooper Cloud first observed the truck parked at an apartment house in Parkesburg and he thereupon "staked out" the truck, awaiting the arrival of the suspected thieves; the "stake out" proved fruitless, and on October 7, 1973, Trooper Cloud determined to have the truck towed to a garage near the Avondale Barracks in order to examine the vehicle for the presence of physical evidence.

5. Acting on that determination, Trooper Cloud directed defendant, owner of a vehicle repair shop and garage near the Avondale Barracks, to tow the truck to his garage, and on October 7, 1973, defendant's son towed the truck from Parkesburg to defendant's garage in Avondale; and, on the same day, Trooper Cloud determined that Executive was the registered owner of the vehicle and, in accordance with routine procedure, notified the National Crime Information Center (N.C.I.C.) that the vehicle had been recovered.

6. The lease between Reading and Executive provided that at the expiration of the leased term the truck became the property of Reading, and such term expired in October, 1973; and on October 23 of that year, Executive forwarded the title to the vehicle to Reading, endorsed for transfer.

7. For reasons best known to itself, Reading filed the endorsed title in its general offices, and did not cause it to be registered in its own name until August 11, 1975, and, accordingly, the truck continued to be registered in the name of Executive until that date.

8. In response to inquiries from defendant, Trooper Cloud in December, 1973, notified Executive, the then registered owner, that the vehicle had been recovered and was stored at defendant's garage;[2] notwithstanding such notice to Executive, the truck remained in defendant's garage and

---

2. Trooper Cloud testified that the usual procedure followed in cases involving the recovery of stolen vehicles requires the recovering police agency to merely advise N.C.I.C. of such recovery. N.C.I.C. then advises the police agency which initiated the theft report of such recovery and the initiating agency in turn advises the owner. We note again that both at the times of the theft and the recovery, Executive and not Reading was the registered owner of the vehicle.

nothing further occurred until February 3, 1975, more than two years later, when defendant's wife received a telephone call from Executive, advising her that Reading owned the vehicle; on or about February 19, 1975, Reading learned for the first time that the truck had been recovered and was at defendant's garage; and late in the same month, an officer of Reading's police division was dispatched to the Avondale Barracks and discussed the matter with Trooper Cloud.

9. Although aware in February, 1975, of the recovery of the vehicle and its location, Reading first contacted defendant by telephone on May 19, 1975, and on May 23, 1975, Reading's Superintendent of Police, one William Reynolds, appeared at defendant's garage and was first informed of defendant's claim for storage charges; when Reynolds asked defendant if the vehicle could be removed by Reading, he was handed an invoice for storage by defendant's wife and told that the truck could be removed upon payment; and Reynolds told defendant, or his wife, that such matters were not within his jurisdiction and he would report to the appropriate department of Reading, whereupon he departed defendant's premises.

10. There was no further contact of any kind between Reading and defendant until December 31, 1975, more than seven months later, when defendant was served with the instant complaint in replevin. The subject vehicle has been in the continuous possession of defendant since October 7, 1973.

## DISCUSSION

The parties agree and our research confirms that there is no statutory lien granted a garageman for

storage charges in Pennsylvania. Recognizing the absence of a statutory remedy, defendant asserts a common law possessory lien for such charges and maintains his right to possession of Reading's truck until satisfaction of the lien. If defendant has a lien, he is entitled to retain possession of Reading's truck until his claim is discharged: Mitchell v. Standard Repair Co., 275 Pa. 328, 330, 119 Atl. 410 (1923). And see Saxton v. Gemehl, 72 Pa. Superior Ct. 177, 181 (1919).[3] Our sole inquiry, then, must focus on whether defendant has a lien.

At common law, possessory liens are consensual in nature and arise from some agreement, either express or implied, between the owner of goods and his bailee who renders some service with respect to those goods: Blair v. Adamchick, 145 Pa. Superior Ct. 125, 21 A.2d 107 (1941); Younger v. Plunkett, 395 F. Supp. 702, 707 (E. D. Pa. 1975). There is little doubt that defendant at bar rendered a service with respect to the truck in keeping it safely. However, before the lien may arise, defendant must establish that the service was performed at the express request of Reading, the owner of the truck, or under circumstances from which Reading's assent to the performance of defendant's service can be reasonably implied: Meyers v. Bratespiece, 174 Pa. 119, 121, 34 Atl. 551 (1896). The scope of a possessory lien, and its very existence, are predicated upon the existence of some agreement between the parties, express or implied: Welded Tube Company of America v. Phoenix Steel Corp., 377 F. Supp. 74, 81, n. 2 (E. D.

---

3. Holding that the garageman's lien derives from and is substantially identical to the ancient warehouseman's common law lien, 72 Pa. Superior Ct. at 181.

Pa. 1974), aff'd, 512 F. 2d 342 (3d Cir. 1975); Younger v. Plunkett, supra at 709.

Inasmuch as Reading was unaware that its vehicle had even been recovered, let alone stored at defendant's garage until Feburary, 1975, we are unable to even remotely imply Reading's assent to defendant's activities between October 7, 1973 and February 19, 1975.[4] Nor are we able to find on this record an implied consent to such storage for the period February 19, 1975, through May 23, 1975, although Reading was aware throughout that period of the storage of its truck at defendant's garage. C.f. Younger v. Plunkett, supra.

On May 23, 1975, however, Reading, by its agent Reynolds, visited defendant's garage, observed and identified its truck, was advised of defendant's services in storing the truck, and was presented a bill for such service. Notwithstanding the occurrence of these events and at the same time fully aware that storage charges were accruing at the rate of $2 per day, Reading took no action until it filed the instant complaint more than seven months later.

Under these circumstances, we find that Reading's failure to act promptly after the occurrence of the events on May 23, 1975, requires us to reasonably infer that Reading consented to the stor-

---

4. It is inferentially argued by defendant in his brief that Reading's failure to cause title to the truck to be transferred to it in October, 1973, resulted in Reading's failure to receive earlier notice of the vehicle's location in defendant's garage. Stated more succinctly, defendant asserts that delay in receiving notice was entirely the fault of Reading, and from such "fault" we should imply consent to defendant's storage from the date Reading received the title from Executive. In view of our disposition, we need not reach the problem.

age of its truck by defendant at the stated charge from that date. While in the present posture of the case we need not determine the sum that should ultimately be paid in satisfaction of defendant's claim, we do find that a consensual, possessory lien was created in 1975, which lien was viable and in force at the date of trial. So finding, we make the following

## CONCLUSIONS OF LAW

1. Reading Company is now, and has been since October 23, 1973, the owner of one 1973 Chevrolet pick-up truck, more particularly described in certificate of title in evidence as plaintiffs' Exhibit P-1.

2. A common law possessory garageman's lien was created in and attached to the said truck in favor of defendant during the year 1975 at a time when the truck was in defendant's possession, entitling defendant to retain possession of the truck until satisfaction of the lien.

3. Plaintiffs are not entitled to recover possession of the truck until the lien is discharged.

## JUDGMENT

And now, April 5th, 1976, judgment is entered against plaintiffs upon their complaint in replevin seeking to recover possession of one 1973 Chevrolet pick-up truck described as heretofore, such judgment, however, limited to a determination of plaintiffs' right to recover possession of the said truck.