174    119|
35 SC '211|

Charles Meyers and Daniel Meyers, trading as Charles Meyers & Bro., *v.* J. Bratespiece, Appellant.

*Bailment—Lien for work on goods—Locatio operis—Contract.*

In order to charge a chattel with the lien which a workman or artisan obtains by his labor and skill in increasing the value of personal property placed in his possession to be improved, the labor must have been done at the request of the owner, or under circumstances from which his assent can be reasonably implied; it does not extend to one not in privity with the owner.

H. received from plaintiffs cloth to be made into coats, and without the knowledge of plaintiffs delivered some of it to defendant to do the required work, agreeing to pay defendant forty per cent more for making the coats than he was to receive from plaintiffs. *Held*, that defendant had no lien on the coats as against plaintiffs for the work which he had done.

Argued Jan. 23, 1896.  Appeal, No. 192, July T., 1895, by defendant, from judgment of C. P. No. 4, Phila. Co., September T., 1894, No. 432, on verdict for plaintiffs.  Before STERRETT, C. J., GREEN, WILLIAMS, McCOLLUM, MITCHELL, DEAN and FELL, JJ.  Affirmed.

Replevin to recover a lot of coats.  Before ARNOLD, J.

At the trial it appeared that plaintiffs delivered to Abraham Harris a quantity of cloth, to make up into coats at the rate of 35 cents per coat.  Harris entered into a contract with defendant by which he agreed to pay him 50 cents per coat for making up a portion of the cloth.  Harris after collecting some of the money due for the coats absconded without paying defendant, who claimed to retain the coats until he was paid for the work.

The court charged in part as follows:

This is an action brought by the owner of these coats to get them back from a man with whom he had no dealings whatever, a perfect stranger.  The plaintiffs gave these coats to a man named Harris to make up for 35 cents apiece, and Harris has decamped and judgment has gone against him in this case. When the plaintiff wanted to get his coats he found them in the hands of Mr. Bratespiece, the defendant, who is defending before you to-day, who got them from Harris under a contract

to make the coats for 50 cents apiece, he says, although the agreement between Meyers and Harris was to have them made for 35 cents apiece. [It would be monstrous when you give a man your articles to make up for a certain sum, if he could go and give them to somebody else to make up for twice that sum and hold them until you paid him. There is no contractual relation, as we call it in the law, between the plaintiff, Meyers, and Mr. Bratespiece. His rights were altogether derived through Mr. Harris, and he has to work them out through him. He must look to Harris for his payment, and not to Mr. Meyers. Mr. Meyers had no dealings with him. It is an entirely different case from a mechanic's claim, the right to file which is conferred by express statute upon a subcontractor. That principle of law has no application here whatever. There is no right of retention of the goods for work done upon them except as between the parties themselves or any person claiming through them by mutual agreement.] [3]  [For instance, if Mr. Harris had said to Meyers, "I cannot do this work for 35 cents, and I can get it done by Mr. Bratespiece for 50 cents," and Meyers had said, "Go on and do it," that would have held Meyers; but nothing of that kind occurred here. Meyers never dealt with Bratespiece in the matter. The law is well settled on this point.] [4]  The right of possession to the thing which is the basis of a lien does not exist in favor of a journeyman or day laborer or substituted workman, as in this case, whose possession is the same as that of his employer. He has no other security for his wages than the employer's personal responsibility on the contract or bailment for work.

There being no relation whatever of contract between the plaintiffs, Meyers & Bro., and Mr. Bratespiece, and it being undoubted that these were Meyers' coats, they had a right to take them by writ of replevin; they belonged to them, and your verdict must be in favor of the plaintiffs in this case.

Verdict and judgment for plaintiffs. Defendant appealed.

*Errors assigned* among others were, (1) in directing verdict for plaintiffs; (2) in entering judgment thereon; (3, 4) portions of charge as above, quoting them.

. *Clinton O. Mayer*, of *Greenwald & Mayer*, for appellant.—

The learned court below fell into the error of calling the defendant a journeyman, whereas he was not a journeyman employee, but a contractor : McIntyre v. Carver, 2 Watts & Sargeant, 395.

Bratespiece is in the position of an ordinary contractor with Harris, and as such is entitled to his lien upon the goods for work and labor done : Cross & Bro. v. Knickerbocker, 8 Phila. 496 ; Hoover v. Epler, 52 Pa. 522.

*Benjamin Alexander*, for appellees.—The employment must be by the owner whose property is to be affected by the lien, or by his consent, expressed or implied : White v. Smith, 44 N. J. L. 109 ; Hiscox v. Greenwood, 4 Esp. 174 ; Hollinsworth v. Dow, 19 Pick. 228 ; 1 Jones on Liens, 2d ed., sec. 733 ; 13 Am. & Eng. Ency. of Law, 591 ; Story on Bailments, ed. 1870, sec. 440.

OPINION BY MR. JUSTICE McCOLLUM, March 2, 1896 :

We agree with the learned court below that Bratespiece had no lien for his labor on the goods of the plaintiffs that he received from Harris, their bailee. There was no contractual relation between him and the owners. They had delivered the goods to Harris to be made into coats at a price mutually agreed upon, but their contract did not authorize him to subject the goods to liens for labor and expenditures in the hands of other persons. While the goods were in his possession they would undoubtedly be subject to a lien in his favor for work done upon them by him and his employees, in conformity with the contract. " Whenever a workman or artisan by his labor or skill increases the value of personal property placed in his possession to be improved he has a lien upon it for his proper charges until paid," but " in order to charge a chattel with this lien, the labor for which the lien is claimed must have been done at the request of the ' owner or under circumstances from which his assent can be reasonably implied. It does not extend to one not in privity with the owners : " 13 Am. & Eng. Ency. of Law, p. 590 and 591 ; Clark v. Hale, 34 Conn. 398, and Hollingsworth v. Dow, 19 Pickering, 228. These appear to be well settled principles relating to and governing the common law lien which Bratespiece claimed he had on the plaintiffs' goods, but they very clearly demonstrate, we think, that his claim was without any

just or legal foundation. The goods were in his possession without the consent or knowledge of the plaintiffs and it is quite probable that he knew they were the owners of them. There is no claim or pretense that Harris represented himself as the owner, and in the absence of evidence to the contrary the fair presumption is that he correctly advised Bratespiece as to the ownership and explained to him how the goods came to his possession. If the contention of Bratespiece in respect to lien is sound Harris might have distributed to a dozen tailor shops the material for the hundred and twenty-two coats he was to make for the plaintiffs under his contract with them, and conferred upon each of his dozen employees, or subcontractors, the right to a lien upon it for his labor. But this is not all. He might have agreed to pay each subcontractor for his work more than he was entitled to receive for the same work under his contract with the owners. The evidence in this case shows that he agreed to pay Bratespiece 40 per cent more for making the coats than he had agreed with the plaintiffs to make them for, and that Bratespiece claimed the right to retain these until he was paid for his work on the basis of his agreement with Harris. We think it is clear that the lien which the common law gives to a mechanic for work done at the request of the owner upon personal property placed in his possession by the latter, cannot be extended in accordance with the appellant's contention.

The specifications of error are overruled and the judgment is affirmed.