396 A.2d 1324

**ASSOCIATES FINANCIAL SERVICES COMPANY, INC., Appellant,**

**v.**

**William F. O'DELL and Mary E. O'Dell his wife, and A. G. Turley, Individually, and t/d/b/a A. G. Service, Appellees.**

Superior Court of Pennsylvania.

Submitted Oct. 26, 1978.

Decided Jan. 18, 1979.

---

Reed J. Davis, Pittsburgh, for appellant.

Armand R. Cingolani, Jr., Butler, for appellee, A. G. Turley.

Lester S. Becker, Butler, for appellees, William O'Dell and Mary E. O'Dell.

Before PRICE, HESTER and WATKINS, JJ.

HESTER, Judge:

This appeal raises the question of whether a garagekeeper has a common law possessory lien on a motor vehicle for costs of towing and storage as against the assignee of an installment sales contract on the vehicle. In the circumstances presented, we hold no such lien exists.

On March 25, 1975, appellees William F. and Mary E. O'Dell purchased a Kenworth tractor from Anderson Sales Service, Inc. of Butler County, Pennsylvania. The Installment Sales Contract and Security Agreement were assigned

to appellant, Associates Financial Services Company, Inc., (Associates). In early February, 1976, appellee O'Dell, in the course of his employment, drove the vehicle to Texarkana, Texas, where it became disabled. O'Dell requested appellee Turley, a truck towing, storage, and repairman from Zelienople, Pennsylvania, to drive to Texas, retrieve the vehicle, and bring it back. Turley complied, incurring charges for towing and storage in the amount of $2,772.00.[1]

Meanwhile, O'Dells had defaulted in their payments on the tractor and Associates sought to regain possession. When it found the vehicle in Turley's custody, Associates instituted the instant replevin action[2] against O'Dells and Turley, individually and doing business as A. G. Service. Turley answered in counterclaim a possessory lien in the tractor of $2,772.00. The court awarded possession of the vehicle to Associates, but granted Turley a possessory lien in the tractor for the stated amount. Associates brought this appeal.

 It is well settled in this Commonwealth that possessory liens[3] are fundamentally consensual in nature and arise from some agreement, either expressed or implied, between the owner of goods and the bailee who renders some service with respect to the goods. *Meyers v. Bratespiece*, 174 Pa. 119, 34 A. 551 (1896); *Apartment Owners and Managers, Etc. v. Brown*, 252 Pa.Super. 539, 382 A.2d 473 (1977); *Younger v. Plunkett*, 395 F.Supp. 702 (E.D.Pa.,

1. Turley's mileage for his three day, round-trip effort was 2640 at $1.00 per mile. In addition, he stored the tractor in his garage for 44 days at $3.00 per day.

2. Pa.R.C.P. 1071 et seq.

3. The term "lien" is derived from the French and denotes, literally, a string or a tie. In its broadest sense, it signifies the hold which one person, the creditor or lienor, has upon the property of another, the debtor, as security for services rendered by the former. Brown, Law of Personal Property, § 107 (1955). For a common law possessory lien to arise, it is essential that the claimant have exclusive possession of the property, for the lien is based directly on the idea of possession. Am.Jur.2d, Liens, § 21. This requirement is satisfied in the instant case, since Turley maintained custody of the tractor throughout the proceedings.

1975). In the leading *Meyers* case, supra, plaintiff had delivered to one Harris certain cloths to be made into coats at 35¢ per coat. Harris, without plaintiff's knowledge, contracted with Bratespiece to have the coats made for 50¢ apiece, and he then absconded with plaintiff's money. In plaintiff's replevin action, Bratespiece pled a possessory lien and refused to return the finished coats. In an oft-quoted passage, the court stated:

> We agree with the learned court below that Bratespiece had no lien for his labor on the goods of the plaintiffs that he received from Harris, their bailee. There was no contractual relation between him and the owners.
>
> \* \* \* \* \* \*
>
> "Whenever a workman or artisan, by his labor or skill, increases the value of personal property placed in his possession to be improved, he has a lien upon it for his proper charges until paid", but "in order to charge a chattel with this lien the labor for which the lien is claimed must have been done at the request of the owner, or under circumstances from which his assent can be reasonably implied. It does not extend to one not in privity with the owner." 13 Am. & Eng. Enc. Law, pp. 590, 591; *Clark v. Hale,* 34 Conn. 398, and *Hollingsworth v. Dow,* 19 Pick. 228. These appear to be well-settled principles relating to and governing the common-law lien which Bratespiece claimed he had on the plaintiffs' goods, but they very clearly demonstrate, we think, that his claim was without any just or legal foundation. 174 Pa. 119, at 121, 34 A. 551, at 551.

Thus, the consensual nature of the transaction which gives rise to a possessory lien is an indispensable element of the common law possessory lien as recognized in this Commonwealth. Professor Brown has observed: "[N]o person can acquire a lien on the goods of another except by the latter's consent given expressly or impliedly, either by himself or through some third person authorized to act in his behalf." Brown, Law of personal Property, § 107 (1955).

A garagekeeper's possessory lien is no different. His common law lien will arise where he has repaired,

stored, or otherwise provided service to an automobile at the request of the owner. *Saxton v. Gemehl,* 72 Pa.Super. 177 (1919); *Wilson v. Malenock,* 128 Pa.Super. 544, 194 A. 508 (1937). P.L.E. Motor Vehicles, § 385; Anno. 48 A.L.R.2d 894. However, the lien will not attach as against one who has not authorized, expressly or impliedly, the repairs or services rendered. *Midland Credit Co. v. White et al.,* 175 Pa.Super. 314, 104 A.2d 350 (1954). This question arises most frequently in the realm of automobile financing. The holder of a bailment lease or installment sales contract will not be liable for a lien asserted by a garageman for services which such holder has not assented to. *Midland,* supra; *Automobile Finance Co. v. Markman,* 82 Pa.Super. 478 (1924); *Bankers' Commercial Security Co. Inc. v. Brennan,* 75 Pa.Super. 199 (1920); *Stern v. Sica,* 66 Pa.Super. 84 (1917). Thus, in *Midland,* one White leased the car from Crawford, who assigned the lease to Midland. White was to make payments on the balance due on the purchase price of the car in monthly installments. Following an accident, White delivered the car to one Herring, a garageman, for repairs. When White defaulted on his payments, Midland filed a replevin action against White and Herring. Herring's assertion of a lien on the vehicle for repairs, as against Midland, was unsuccessful:

> It is well settled that the appellant [Midland] as owner, is not liable to the appellee [Herring] for repairs to the automobile unless authorized by it expressly or under circumstances from which its assent can be reasonably implied. *Meyers v. Bratespiece,* 174 Pa. 119, 34 A. 551; *Bankers' Commercial Security Co. v. Brennan & Levy,* 75 Pa.Super. 199.

175 Pa.Super. at 316, 104 A.2d at 352.

More recently this Court considered whether one who removes an illegally parked vehicle from private property has a possessory lien on the car for costs of towing and storage. In *Apartment Owners and Managers v. Brown,* 252 Pa.Super. 539, 382 A.2d 473 (1977) we held no such lien exists since the garageman "acquired possession of [the owner's] automobile without the owner's express consent".

262 Pa.Super. at 546, 382 A.2d at 477. See also, *Younger v. Plunkett,* 375 F.Supp. 702 (E.D., Pa.1975) (construing Pennsylvania law); Anno. 85 A.L.R.3d 240.

Authorities in other jurisdictions are in accord with our view that a garageman has no common law possessory lien for costs of towing and storing an automobile as against a non-assenting holder of an installment sales contract on the vehicle. See, *Auto Security Co. Inc. v. Stewart,* 103 N.J.L.I. 135 A. 92 (1926); *Crosby v. Hill,* 121 Me. 432, 117 A. 585 (1922).[4]

█ We have no difficulty in deciding that, based upon this record, appellant Associates had given no consent, express or implied, to the charges in question. Appellee O'Dell testified he was aware of and consented to all storage and towing charges, but the record is devoid of any evidence pointing to Associates' assent to the services. We think this case falls squarely within the purview of *Myers* and *Midland* and that the common law gives no possessory lien to Turley as to appellant. The judgment of the court below is therefore

Reversed.

---

4. In some states, such a lien exists by operation of statute. See, e. g. *State v. Hill,* 115 N.H. 37, 332 A.2d 182 (1975). Pennsylvania has no statute conferring such a lien in these circumstances.