487 A.2d 356

**UNITY SAVINGS ASSOCIATION, Appellant,**

v.

**AMERICAN URBAN SCIENCES FOUNDATION INC., and American Bank & Trust Co. of Pa.**

Superior Court of Pennsylvania.

Argued Feb. 16, 1984.

Filed Dec. 21, 1984.

472

Robert J. Hoelscher, Philadelphia, for appellant.

Joseph M. Hankins, Philadelphia, for appellee.

Before CAVANAUGH, CIRILLO and WATKINS, JJ.

CIRILLO, Judge:

This is an appeal from an order of the Court of Common Pleas, Luzerne County, staying a sheriff's sale scheduled by appellant, the Unity Savings Association ("Unity"). The stay of execution was granted upon petition of appellee, the American Bank and Trust Company of Pennsylvania ("American"). The subject property scheduled for execution consisted of fifty-six subdivision lots in Plot "B" of the

Valley of Lakes Development in Black Creek Township, Luzerne County, Pennsylvania ("B" lots). Both Unity and American maintained mortgage liens on the "B" lots.

The dispute between Unity and American initially arose in October of 1979 when American, in order to foreclose its mortgage liens, filed a writ of execution on the "B" lots. After several continuances the writ was reissued and sheriff's sale scheduled for June 27, 1980. Unity, with the consent of American, was granted leave to intervene in the pending execution proceedings. With mortgage liens of its own on the "B" lots, Unity, as a party in interest, filed a petition to stay the sale scheduled by American. On July 15, 1980 following a hearing, Unity's petition for stay of execution was denied.[1] On August 1, 1980, American purchased the "B" lots on the writ at a continued sheriff's sale. The sheriff's deed was delivered and recorded on August 12, 1980.

Notwithstanding American's purchase at sheriff's sale, Unity issued its own writ of execution on the "B" lots. By stipulation of counsel, American intervened, and on November 26 petitioned the court for a stay of execution. The parties agreed that the sale of the "B" lots would be postponed pending the outcome of negotiations.

Protracted settlement discussions over the "B" lots continued for the next ten months. Negotiations eventually broke down.

On October 7, 1981 the hearing on American's petition to stay sheriff's sale was held before the Honorable Bernard C. Brominski. Following this hearing, Judge Brominski ordered a permanent stay of Unity's scheduled sheriff's sale. He explained that Unity could not proceed with sheriff's sale on the "B" lots since its mortgage lien on the subject property had been divested by American's prior execution on August 1, 1980. Unity appealed.

---

1. The order denying Unity's petition was affirmed on appeal. *American Bank & Trust Co. v. High Vista,* 304 Pa.Super. 611, 450 A.2d 1048 (1982).

Our concern on appeal is whether the stay of execution was proper. Is the divestiture of Unity's mortgage lien, as determined by Judge Brominski, a valid basis for staying its execution on the "B" lots? Is a petition to stay execution under Rule 3121(b) of the Pennsylvania Rules of Civil Procedure an appropriate manner in which to determine the respective priority of two competing mortgage liens?

Under the Pennsylvania Rules of Civil Procedure, one way to attack an execution is by a petition for stay. Pa.R. C.P. 3121. Rule 3121 provides that a court may grant a stay of execution upon application of a party in interest, showing "any legal or equitable ground therefor." Pa.R. C.P. 3121(b). This rule, as presently constituted, does not delineate the grounds for a stay and subsequent case law does little to add definition. Nevertheless, we are convinced that the divestiture of Unity's lien is a valid ground by which American as an interested party may obtain a stay of Unity's execution.

As commonly understood, a lien is a charge upon property by which a lien creditor has the right to execute on that property in order to satisfy a debt or other obligation. *Associate Financial Services Co., Inc. v. O'Dell,* 262 Pa.Super. 584, 396 A.2d 1324 (1977); *United States v. Sullivan,* 333 F.2d 100 (3rd Cir.Pa.1964). Of course, the right to execute against a debtor's property, like the right of lien itself, is subject to divestment. Once a creditor's lien on property is divested, so too is his right to execute on *that* property. *See, Steckel v. Stickland,* 50 Pa. D & C 2d 784 (1971); *Hirsch v. Bunker Hill Mutual Insurance Co.,* 8 Pa. D & C 2d 259 (1957) (discharged judgment will not support writ of execution and such writ should be stayed). In such circumstances, a stay of execution is not only correct, but necessary.

Relevant to the instant case is the general rule that a sheriff's sale of property divests all junior liens on that property. *Albert J. Grosser v. Rosen,* 436 Pa. 311, 259 A.2d 679 (1969); *Borough of McDonald v. Davidson,* 128 Pa.Su-

per. 38, 193 A. 472 (1937); Sum.Pa.Jur. Mortgages, § 256.[2] Here, the basis for the order staying the sheriff's sale was Judge Brominski's finding that Unity's mortgage lien on the "B" lots had been divested. Judge Brominski ruled that American's mortgage lien was senior in priority to Unity's lien, and that American's purchase of the "B" lots at the sheriff's sale of August 1, 1980, effectively extinguished Unity's right to execute on the property.

Unity's real bone of contention is not whether its mortgage lien was junior to American's lien, nor whether its lien was divested by American's prior execution. In fact, Unity voices little challenge to Judge Brominski's findings as to these issues. Rather, Unity maintains that the determination of lien priority and the attendant finding of lien divestiture were subjects for plenary proceedings in ejectment and were not properly decided in a summary proceeding for stay of execution. Unity urges us to allow its scheduled sheriff's sale to proceed, and to leave American with the option of litigating questions of title subsequently. We reject Unity's plea.

■ Generally, the practice in Pennsylvania has been to allow a judgment creditor to sell any real estate alleged to belong to his debtor, and to have issues of title tried afterwards in an action of ejectment. *Bell v. Mock*, 413 Pa. 71, 197 A.2d 610 (1963); *Mantz v. Kistler*, 221 Pa. 142, 70 A. 545 (1908); *Davis v. Michener*, 106 Pa. 395 (1884). The courts usually do not make such determinations of title in advance of sale. Goodrich Amram 2d § 3102:1:2.

This practice, while time-honored, has not been above reproach. As early as 1908, our Supreme Court noted that the practice of determining questions of title only after execution sale has taken place is "not the best system."

---

**2.** *See, e.g.,* 42 Pa.C.S. § 8152. Judicial sale as affecting lien of mortgage.

(c) **Sale on prior lien**—A judicial or other sale of real estate in proceedings under a prior judgment ..., or in foreclosure of a prior mortgage shall discharge a mortgage later in lien.

The purchaser at the sale takes title to the property free and clear of the mortgage, and also of all junior liens. Glenn on Mortgages § 76.

*Mantz v. Kistler, supra,* 221 Pa. at 144, 70 A. at 546. In *Mantz* the Court stated that a system in which "the rights of parties are fought out and adjusted in advance of sale ... is very much superior." Id.[3]

▇ Since the promulgation of Rule 3121, the practice of deciding issues of disputed title only after sale no longer seems inviolate. Goodrich Amram 2d § 3102:1:2. The broad language of Rule 3121 permits the trial court to stay execution pending the disposition of a property claim, or on any other legal or equitable ground. Of course, the existence of a proper legal ground for stay of execution must be established in advance of sale. Here, the ground asserted for stay of execution, divestiture of Unity's lien, is determinable only through an assessment of lien priority. In these circumstances, it is not improper to address questions of title prior to sheriff's sale.[4]

Clearly in this case, if Unity's lien was divested, and its right to execute thereby discharged, the scheduled execution sale should not be allowed to proceed. Doubtlessly, a sale under these conditions would work undue hardship on American. Judge Brominski determined that American's mortgage lien on the "B" lots was senior to Unity's liens; and moreover, that American, by virtue of its purchase at the previous sheriff's sale, obtained title free and clear of

---

3. The system in New Jersey, for example, allows courts to adjust priorities of competing execution creditors in summary proceedings prior to execution sale. *Walton v. Hillier,* 128 N.J.L. 7, 24 A.2d 219 (1942); *Miller v. Barber,* 73 N.J.L. 38, 62 A. 276 (1905).

4. *Cf. Fleming v. Quaid,* 204 Pa.Super. 19, 201 A.2d 252 (1964) (Rule 3121 does not provide appropriate procedure to determine ownership of attached fund; dispute over debtor's ownership of property raised in Rule 3121 petition will not prevent attachment). This case is distinguishable from the case at bar. In *Fleming* the quantity and quality of debtor's *property* are at issue, not the creditor's right to execute. We held that because the debtor's personal property is fungible, attachment should be allowed to proceed and questions of ownership decided thereafter. In the case at bar, however, the ownership of debtor's property (B lots) is not at issue. Rather, the concern is whether the creditor/mortgagee (Unity) retains the right to execute or whether this right has been divested. This matter must be resolved in advance of sale.

Unity's claims. While other recourse may be available to Unity, it may not now execute against the "B" lots.

A second issue raised by Unity concerns a procedural matter. Approximately one week prior to the hearing date scheduled for American's petition to stay execution, Unity filed a praecipe directing the prothonotary to strike the "B" lots from its writ of execution. Unity contends that its removal of the "B" lots from its writ effectively mooted this case—since there was no longer a sheriff's sale to be stayed. Following the hearing on American's petition to stay, Judge Brominski ruled that Unity's eleventh hour excision of the "B" lots from its writ was harassing, vexatious, and prejudicial to American. We agree with Judge Brominski.

■■■ It is generally within the power of an execution creditor to control his writ and to order the writ withdrawn or suspended. 12 Pa.Std. Practice 2d § 72:66. However, as we noted above, the ultimate control of the execution process rests with the trial court. *Capozzi v. Antonoplos,* 414 Pa. 565, 201 A.2d 420 (1964). It is the trial court's responsibility to see that the execution process is not abused.

Here, Unity attempted to withdraw its writ of execution one week prior to the date of hearing on American's petition. A year of negotiations between the parties had passed. Considerable time and expense had been invested. Surely, after the time spent and inconvenience suffered, American is entitled to resolution of its petition.

We find Pa.R.C.P. 229 compelling analogy. The withdrawal of Unity's writ, like a plaintiff's praecipe for discontinuance, should not be tolerated where substantial harassment or vexation results to another party. Pa.R.C.P. 229(c). Judge Brominski was correct in disallowing Unity's withdrawal.

In sum, Judge Brominski properly reached the merits of this case, and correctly found that a valid ground for stay of execution existed.

Order affirmed.