553 A.2d 412

**MACK TRUCKS, INC., a Corporation, Appellee,**

**v.**

**PERFORMANCE ASSOCIATES CORP., a Corporation, Appellant.**

Superior Court of Pennsylvania.

Argued Nov. 3, 1988.

Filed Jan. 3, 1989.

Reargument Denied Feb. 16, 1989.

---

174

Michael J. Boyle, Pittsburgh, for appellant.

Walter A. Bunt, Pittsburgh, for appellee.

Before BROSKY, ROWLEY and MONTEMURO, JJ.

MONTEMURO, Judge:

Appellant, Performance Associates Corporation ("PAC"), has filed this appeal from the March 2, 1988, Order of the

Court of Common Pleas of Allegheny, dismissing appellant's counterclaim with prejudice. We affirm.

The appellee in the present case, Mack Trucks, Inc. ("Mack"), engaged PAC in April of 1986 to develop and implement a computer software system for use in Mack's truck sales operations. In order to assist PAC in the designing of the software system, Mack provided PAC with a computer modem (the "modem"), access to Mack's automated Distribution Center Operations system (the "DCO")[1], and Mack's accounting and operations manual (the "manual"). PAC worked on the development of the computer system in 1986 and 1987, although the parties experienced delays and disagreements concerning, *inter alia,* payments for various costs incurred by PAC. In October of 1987, PAC stopped working on the software project and Mack subsequently notified PAC, in a letter dated October 26, 1987, that it was terminating the contractual relationship between them. In Mack's contract termination letter, it requested that PAC return the modem, the DCO, and the manual. Additionally, Mack requested that PAC provide it with the most current software modules and related documentation that PAC had developed for Mack's use. PAC refused to deliver any of this property to Mack, claiming that Mack owed it for in-process work totalling $149,903.00. R.R. at 51a.

On December 23, 1987, Mack filed a complaint in Replevin against PAC, seeking to obtain the modem, the DCO, the manual, and the software modules and related documentation. PAC filed its answer on January 12, 1988, and, by way of a counterclaim, PAC asserted that it held a common law artisan's lien in the property which Mack sought to replevy.[2] Mack subsequently filed preliminary objections in

1. Mack's automated Distribution Center Operations system is a computer software system developed by Mack.

2. We note that Mack filed a motion for a writ of seizure following the commencement of the replevin action. Prior to a hearing on this motion, the parties reached an agreement whereby Mack withdrew its motion for a writ of seizure in return for the modem, manual, and

the nature of a demurrer to PAC's counterclaim and, following oral argument, the Honorable Ralph J. Cappy sustained Mack's preliminary objections, thereby dismissing PAC's counterclaim with prejudice.

■ Initially, we recognize that an order sustaining preliminary objections and dismissing a counterclaim is an appealable, final order because it puts the defendant out of court so far as the counterclaim is concerned, even though the plaintiff's claim is still pending. *See Danko Development Corp. v. Econocast Corp.*, 369 Pa.Super. 120, 122 n. 1, 534 A.2d 1108, 1109 n. 1 (1987); *Zivitz v. Centennial Road Properties, Inc.*, 328 Pa.Super. 79, 81 n. 1, 476 A.2d 462, 463 n. 1 (1984). *See also Fidelity Bank v. Duden*, 361 Pa.Super. 124, 521 A.2d 958 (1987) (en banc) (order summarily dismissing counterclaim is final and immediately appealable). In *Rose v. Wissinger*, 294 Pa.Super. 265, 439 A.2d 1193 (1982), this Court set forth the following standards which we are bound to follow in the instant case:

> It is axiomatic in the law of pleading that preliminary objections in the nature of a demurrer admit as true all well and clearly pleaded material, factual averments and all inferences fairly deductible therefrom.... Conclusions of law and unjustified inferences are not admitted by the pleading.... Starting from this point of reference the complaint must be examined to determine whether it sets forth a cause of action which, if proved, would entitle the party to the relief sought. If such is the case, the demurrer may not be sustained. On the other hand, where the complaint fails to set forth a cause of action, a preliminary objection in the nature of a demurrer is properly sustained.

*Id.*, 294 Pa.Superior Ct. at 270, 439 A.2d at 1196 (citations omitted).

■ It is clear from an examination of PAC's complaint and the relevant case law, that PAC has no cause of action based upon a common law artisan's lien. In the early case

DCO system. Mack agreed to post a bond to preserve PAC's asserted rights with reference to these items.

of *Meyers & Bro. v. Bratespiece,* 174 Pa. 119, 34A. 551 (1896), the Supreme Court defined the artisan's lien as follows:

> Whenever a workman or artisan by his labor or skill increases the value of personal property *placed in his possession to be improved* he has a lien upon it for his proper charges until paid, but in order to charge a chattel with this lien, the labor for which the lien is claimed must have been done at the request of the owner or under circumstances from which his assent can be reasonably implied. It does not extend to one not in privity with the owners.

*Id.,* 174 Pa. at 121, 34 A. at 551 (citation omitted) (emphasis added). The artisan's lien arises, therefore, when work has been performed on a chattel or materials have been added to a chattel, thereby increasing the chattel's value. *Associates Financial Services Co. v. O'Dell,* 491 Pa. 1, 417 A.2d 604 (1980) (recognizing that it is a well-settled principle of common law that he who by labor, skill, or materials adds value to the chattel of another has a lien in that chattel). The artisan who has performed this work is entitled to a possessory lien in the chattel for the value of the work he has performed. *See e.g., Mellon National Bank and Trust Company v. Wagner,* 198 Pa.Super. 290, 182 A.2d 284 (1962) (purchaser of tapestry would not be entitled to possession of tapestry as long as artisan remained unpaid for her work); *Blair to Use of Davis v. Adamchick,* 145 Pa.Super. 125, 21 A.2d 107 (1941) (repairman was entitled to possessory lien until payment from owner for repairs completed on the auto was received).

■ Based on an examination of the pleadings, the trial court correctly determined that PAC failed to allege that it had "added in any way by their particular skills to the value of Mack's modem, DCO or manual." Op. of Trial Court at 4. Although PAC certainly used these items while working on the Mack project, PAC did not alter these items or add

value to these items.[3]  PAC used these items in its efforts to design a new and separate software system for Mack's sales operations.  Under these factual allegations, the trial court correctly concluded that PAC could not establish the existence of an artisan's lien in Mack's modem, DCO or manual.  We are unpersuaded by the appellant's reliance upon *American Consumer, Inc. v. Anchor Computers, Inc.*, 93 Misc.2d 452, 402 N.Y.S.2d 734 (1978).  This New York case involved five magnetic computer tapes which had been encoded with the names and addresses of customers of R & S Mehlman, Inc. ("Mehlman").  Mehlman delivered these tapes to Anchor Computers, Inc. ("Anchor") so that data on the tapes could be manipulated and modified "to create computer tapes which are capable of providing the names and addresses of purchasers of books; the subject matters thereof purchased, the date of the last purchase, the amount of each purchase, the sex of the purchasers, the frequency of purchases, the customer sources, customer geography factors, including by state, by section centers, by zip code and so on." *Id.* at 453, 402 N.Y.S.2d at 735. The Court held that because Anchor's services enhanced the value of the five magnetic tapes of customer lists, Anchor could claim a lien in such tapes pursuant to the statutory law of New York, Lien Law Section 180:

> A person who makes, alters, repairs or performs work or services of any nature and description upon, or *in any way* enhances the value of an article of personal property, at the request or with the consent of the owner, has a lien on such article. . . .

*Id.* (emphasis added).

Instantly, our role is to determine whether PAC may claim an artisan's lien under the common law of Pennsylvania.  Unlike the facts in *American Consumer, Inc., supra,* PAC did not need Mack's modem, DCO, or manual in order to manipulate, modify, or change these items.  PAC was

---

**3.**  In its counterclaim, PAC alleged that its lien was based upon the services it had provided to Mack as detailed in Exhibit "F" of Mack's complaint.  R.R. at 71a.  This Exhibit lists work performed in the developing of the new software system only.  *Id.* at 51a.

not hired by Mack to increase the value of the modem, DCO, or manual but to create and to implement a new and separate sales software system. The fact that PAC needed to use some of Mack's property for a temporary period of time does not require that we recognize an artisan's lien in this borrowed property. We note with approval the interpretation of Pennsylvania law by the United States Bankruptcy Court for the Eastern District of New York in *Fairway Records, Inc. v. Direct Response Productions, Inc. (In re Fairway Records, Inc.)*, 6 B.R. 162 (1980). In that case, Fairway Records was involved in promoting and selling sound recordings. Sales were achieved by way of videotapes which were prepared by Fairway Records for television broadcast. Direct Response Productions had been hired by Fairway Records to add "end tags" to the videotapes; the end tags informed the television audience of the address or phone number to be used in purchasing the sound recording. Direct Response Productions added the end tags by duplicating each videotape delivered by Fairway Records and adding to the end of each duplicate tape the image and sound of the end tag. When Fairway Records filed a petition for relief under Chapter 11 of the Bankruptcy Code, Direct Response Productions claimed, *inter alia*, that it had a common law artisans' lien in various videotapes which had been delivered by Fairway Records for the addition of end tags. The Bankruptcy Court, applying Pennsylvania law, held that Direct Response Productions could not claim an artisan's lien in Fairway Records' videotapes because the videotapes were merely tools used in producing the final product: duplicate videotapes with end tags. The Court relied upon an early decision of our Court:

> In *Hunter v. Challinor–Dunker Co.*, 50 Pa.Super. 617 (1912), the appellee-Hunter commenced an action of trespass against the appellant for its refusal to redeliver certain dies and cuts placed in appellant's possession by appellee-Hunter for the purpose of printing post cards. Appellant's sole defense to the action was that Pennsylvania law gave the appellant an artisan's lien on the dies

and cuts until the debt was paid. In addressing the issue of whether appellant had an artisans' lien, the Superior Court of Pennsylvania stated: "But no case that has been brought to our attention has gone so far in advancing the doctrine (which it is said is to be favored) as to abolish the distinction between labor, skill, or expense bestowed on the bailed article, and the bailment of an article for use in manufacturing something else. That distinction prevents the application of the rule to this case, for, as Judge Kennedy in speaking of the dies and cuts tersely says: 'The goods were simply tools, with which the work was done, not on which the work was done.' "

*Fairway Records, Inc., supra* at 165. The Bankruptcy Court also relied upon what it characterized as a refusal by the Pennsylvania Supreme Court to take a liberal approach toward the recognition of the artisan's lien, quoting the following:

The commercial customs of today do not favor the tying up of personal property by liens; and, if the courts should now countenance any such general attitude toward the credit system as that announced in the case relied on by appellant, business, as that term is presently understood, would soon come to a standstill. *Mitchell v. Standard Repair Co.*, 275 Pa. 328 at 332, 119 A. 410 at 411 (1923); *Welded Tube Co. of America v. Phoenix Steel Corp.*, 512 F.2d 342 (3rd Cir.1975).

*Fairway Records, Inc., supra* at 165.

We are convinced that the modem, DCO, and manual delivered to PAC by Mack to be used in the development of a sales software system were "tools", much like the dies and cuts in *Hunter v. Challinor–Dunker Co., supra,* and the original videotapes in *Fairway Records, Inc., supra.* As a result, PAC may not claim an artisan's lien in those items of personal property. Further, the software modules and related documentation could not properly be subject to a common law artisan's lien because these items were never the personal property of Mack, delivered to PAC so that PAC could alter them in some way so as to increase their

value. Instead, "the software modules were designed wholly and created by PAC pursuant to the agreement with Mack." *Id.* In conclusion, we find that the lien which the common law gives to an artisan for work done at the request of the owner upon personal property placed in his possession by the owner, cannot be extended to encompass the facts before us in this case. Whether either of these parties is entitled to legal relief based upon different legal grounds, as in an action for breach of contract, is not for us to consider.

ORDER AFFIRMED.