

2001 Decisions

Opinions of the United
States Court of Appeals
for the Third Circuit

8-27-2001

# Cowell v. Palmer

Precedential or Non-Precedential:

Docket 00-1075

Follow this and additional works at: http://digitalcommons.law.villanova.edu/thirdcircuit_2001

## Recommended Citation

"Cowell v. Palmer" (2001). *2001 Decisions.* Paper 193.
http://digitalcommons.law.villanova.edu/thirdcircuit_2001/193

This decision is brought to you for free and open access by the Opinions of the United States Court of Appeals for the Third Circuit at Villanova University School of Law Digital Repository. It has been accepted for inclusion in 2001 Decisions by an authorized administrator of Villanova University School of Law Digital Repository. For more information, please contact Benjamin.Carlson@law.villanova.edu.

Filed August 27, 2001

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT

No. 00-1075

EILEEN COWELL; RICHARD COWELL;
SYLVESTER PANY; EASTGATE LAND &
DEVELOPMENT CORP.,

      Appellants

v.

PALMER TOWNSHIP; DONALD S. HIMMELREICH;
VIRGINIA S. RICKERT; THEODORE BOREK;
ROBERT LAMMI; JEFFREY YOUNG; ROBERT ELLIOT;
ROBERT WASSER; H. ROBERT DAWS; HEMSTREET,
HIMMELREICH & NITCHKEY; JOHN DOES

On Appeal from the United States District Court
for the Eastern District of Pennsylvania
(D.C. Civil No. 99-cv-03216)
District Judge: Hon. Thomas N. O'Neill, Jr.

Argued: May 21, 2001

Before: BECKER, Chief Judge, SLOVITER, and
AMBRO, Circuit Judges

(Filed August 27, 2001)

       Maurice R. Mitts (Argued)
       Heather Gelfand Ptasznik
       Philadelphia, PA 19103

        Attorneys for Appellants

Maureen P. Fitzgerald (Argued)
McKissock & Hoffman, P.C.
Philadelphia, PA 19103

Attorneys for Appellees

OPINION OF THE COURT

SLOVITER, Circuit Judge.

Eileen Cowell, Richard Cowell, Sylvester Pany, and Eastgate Land & Development Corp. (collectively "plaintiffs") brought takings and due process claims pursuant to 42 U.S.C. S 1983, as well as various state law claims, against Palmer Township, various township officials, and the Township's law firm (collectively "defendants"). The basis for these claims was the defendants' alleged interference in the plaintiffs' land development plans, specifically the imposition of two municipal liens on the plaintiffs' properties in 1992 and 1993. The District Court dismissed the federal law claims under Fed. R. Civ. P. 12(b)(6), declined to allow plaintiffs leave to amend their complaint, and further dismissed the state law claims without prejudice. We now review the plaintiffs' appeal.

I.

FACTS AND PROCEDURAL HISTORY

Eileen Cowell, Richard Cowell, and Sylvester Pany were owners of Eastgate Land & Development Corp. ("Eastgate"), a Pennsylvania real estate development company that owned a 23-acre parcel of land in Palmer Township, Pennsylvania known as the Palmer Business Park. In 1987, the plaintiffs began a three phase project to improve the land for development. This project was subject to the local land use codes of Palmer Township. Defendants Robert Lammi, Jeffrey Young, Robert Elliot, Robert Wasser, and H. Robert Daws were on the Township's Board of Supervisors at all relevant times. Defendant Virginia S. Rickert was also on the board and served as the Treasurer of Palmer

2

Township. Defendant Theodore Borek was the Township's Director of Planning. Defendant Donald Himmelreich was the Solicitor for Palmer Township, and his law firm, Hemstreet, Himmelreich & Nitchkey, served as counsel to the Township.

Appellants planned to sell lots to McDonalds and Kentucky Fried Chicken for the development of restaurants, as well as to build a shopping mall to be called Eastgate Mall. Before contracts could be signed to finalize these plans, the Township allegedly changed the zoning classification of these lots from commercial use to"planned office buildings," thereby preventing the development of these commercial enterprises. Eastgate sued to prevent these zoning changes from taking effect. Plaintiffs allege, and defendants do not deny, that the parties reached a settlement in which Eastgate agreed to cease its plans to build the Eastgate Mall and the Township agreed to approve all projects that had already been proposed for Phases I, II, and II(a) at Palmer Business Park as well as assume responsibility for certain municipal improvements. But when Eastgate proceeded with the development of Phase II, the Township allegedly imposed a building moratorium in July 1987 which prohibited any and all commercial development of the property and caused severe financial hardship for Eastgate.

It is the allegations of the events occurring after 1990 that are most relevant to this appeal. Beginning in 1990, the plaintiffs worked to improve Lots 12 through 17 of Palmer Business Park in order to sell them as buildable lots. On October 22, 1992, the Township imposed a $25,000 lien on Lots 14 and 15, naming Richard Cowell and Nicholas J. Pugliese as owners of those lots. The lien was filed "on the basis of anticipated non-payment of the installation of certain municipal improvements." App. at 206.

The Township explains that the lien was imposed pursuant to an agreement that Cowell and Pugliese would be responsible for paying for paving work on a subdivision called Milford Street, with the Township serving as the guarantor. The Township contends that when neither Cowell nor Pugliese paid the paving contractor on time, the

Township paid the bill and then imposed the lien. The plaintiffs respond that Richard Cowell had sold his interest in Milford Street to Pugliese in 1991 and should not have been responsible for any municipal improvements. More important, they argue that the lien was unlawful under the Municipal Lien Code, 53 Pa. Cons. Stat. Ann. SS 7101 et seq., because no improvements were made on Lots 14 and 15 for which a lien could be legally placed. They further argue that the Township imposed the lien to retaliate against them for successfully challenging the Township's zoning changes in 1987 and to cause financial harm to the plaintiffs.

On March 9, 1993, the Township imposed a second municipal lien in the amount of $250,000 on the subdivisions of Palmer Business Park owned by Eastgate. This lien was filed "for present and future unfunded escrow review accounts and unfunded escrow accounts for municipal improvements." App. at 209. On March 24, 1993, Himmelreich sent a letter to Eastgate on behalf of the Township explaining that the lien was intended to serve as a security for (1) the anticipated failure by Eastgate to complete municipal improvements and (2) the unlawful depletion of funds held in an escrow account for the Township's benefit, accomplished by Richard and Eileen Cowell forging signatures of various township officials in order to obtain the release of various funds held in escrow.

The Cowells had indeed pled guilty to forgery and theft by receipt of stolen property. However, the plaintiffs contend that the reference to the Cowells' criminal conduct was a smokescreen and that the $250,000 lien was imposed for the municipal improvements only. They further allege that the Township refused to remove this lien even after it was informed that the plaintiffs had sufficient funds to pay for the municipal improvements.

In April 1994, Eastgate filed a Chapter 11 bankruptcy petition. As part of their Plan of Reorganization, Eastgate agreed to pay $30,000 to the Township in exchange for a discharge of the $250,000 lien. Eileen Cowell also filed for personal bankruptcy. During Eileen Cowell's bankruptcy proceeding, the bankruptcy judge lifted and expunged the $25,000 lien on July 13, 1998, and thereafter noted in the

4

amended order that "a municipal improvement lien cannot be filed against a property not so improved." App. at 222–223.1 Specifically, the bankruptcy judge found that Lot 14 was not affected or benefitted by the improvements done on Milford Street, which was one mile away and in a separate development.

On June 25, 1999, Eileen Cowell, Richard Cowell, Sylvester Pany, and Eastgate filed the present suit against Palmer Township, various township officials, and the Township's law firm. The complaint alleges that the imposition of the two municipal liens violated the Takings Clause of the Fifth Amendment and the Due Process Clause of the Fourteenth Amendment, as well as various state laws.

The defendants moved to dismiss all of the claims for failure to state a claim upon which relief could be granted pursuant to Fed R. Civ. P. 12(b)(6). The defendants asserted, inter alia, that the actions alleged did not amount to a taking and that the takings claim was not yet ripe. The defendants further asserted that the due process claim was barred by the statute of limitations. In response, the plaintiffs argued that they stated a valid takings claim and that the statute of limitations should not apply because the Township had continued to interfere with their development plans after the imposition of the second lien in March 1993. The plaintiffs therefore asked the court to deny the motion to dismiss or, alternatively, to allow them to amend their complaint to include additional allegations.

In a memorandum and order dated December 16, 1999, the District Court dismissed the takings and due process claims, declined to allow the plaintiffs to amend their complaint, and dismissed the state law claims without prejudice after declining to exercise jurisdiction over them.

The plaintiffs filed a timely notice of appeal. We have jurisdiction under 28 U.S.C. S 1291.

_____

1. Richard Cowell had apparently conveyed his interest in Lot 14 to Eileen Cowell in January 1992 as part of a divorce settlement.

II.

DISCUSSION

A motion to dismiss pursuant to Fed. R. Civ. P. 12(b)(6) may be granted only if, accepting all well-pleaded allegations in the complaint as true and viewing them in the light most favorable to plaintiff, the plaintiff is not entitled to relief. See Maio v. Aetna, Inc., 221 F.3d 472, 481-82 (3d Cir. 2000). We have plenary review of a district court's dismissal of a complaint pursuant to Fed. R. Civ. P. 12(b)(6). See id. We review a district court's refusal to allow a party to amend its complaint for abuse of discretion. See In re Burlington Coat Factory Sec. Litig., 114 F.3d 1410, 1434 (3d Cir. 1997).

A. Takings Claim

The plaintiffs allege that the Township and various township officials violated the Takings Clause by imposing two municipal liens that impaired the value of the plaintiffs' properties and deprived them of their right to full control of their properties. The District Court ruled that the takings claim was not yet ripe because the plaintiffs had not yet availed themselves of the state procedures for seeking just compensation. In the alternative, the court held that the defendants' alleged actions did not rise to the level of a taking.

The Fifth Amendment proscribes the taking of private property for public use without just compensation. See U.S. Const. amend. V. It is well-recognized that this prohibition applies to state and local governments under the Fourteenth Amendment. See Chicago, Burlington & Quincy R.R. Co. v. City of Chicago, 166 U.S. 226, 239 (1897). The Supreme Court has recognized that just compensation need not be paid in advance of the taking -- "all that is required is that a reasonable, certain and adequate provision for obtaining compensation exist at the time of the taking." Williamson County Reg'l Planning Comm'n v. Hamilton Bank of Johnson City, 473 U.S. 172, 194 (1985) (quotation omitted). Therefore, if a state has provided an adequate procedure for seeking just compensation and a landowner has used those procedures to obtain just compensation,

6

there is no violation of the Takings Clause. See id. It follows that "if a State provides an adequate procedure for seeking just compensation, the property owner cannot claim a violation of the [Takings] Clause until it has used the procedure and been denied just compensation." Id. at 195.

Pennsylvania's Eminent Domain Code provides inverse condemnation procedures through which a landowner may seek just compensation for the taking of property. See 26 Pa. Cons. Stat. Ann. SS 1-408, 1-502(e), 1-609.2 Indeed, many landowners have invoked these procedures to seek just compensation for takings. See, e.g., In re Prop. Situate Along Pine Rd. in Earl Township, 743 A.2d 990 (Pa. Commw. 1999); Gross v. City of Pittsburgh, 741 A.2d 234 (Pa. Commw. 1999); Lehigh-Northampton Airport Auth. v. WBF Assocs., 728 A.2d 981 (Pa. Commw. 1999).

In the case at hand, the plaintiffs do not contend that they attempted to use these procedures but were denied just compensation. Instead, they argue they were not required to file an inverse condemnation petition because the Township did not have legal authority under the Eminent Domain Code or any other power to impose the liens. In addition, they claim that they "exhausted state remedies" by raising the merits of the two liens in bankruptcy court.

We reject the plaintiffs' arguments. The plaintiffs' ability to file an inverse condemnation petition in state court in order to obtain just compensation was not related to the Township's right to impose the liens. In addition, adjudication in federal bankruptcy court is not an appropriate alternative to the state inverse condemnation procedures. As the Township notes, the bankruptcy courts never determined whether there had been a taking of the plaintiffs' property. Because the plaintiffs have not availed themselves of the appropriate procedures under

_____

2. Under Pennsylvania law, a landowner may file a petition requesting the appointment of viewers to declare a taking and ascertain just compensation. See 26 Pa. Cons. Stat. Ann.S 1-502(e). If the landowner is successful, then s/he may also be awarded reasonable appraisal, attorney, engineering, and other costs incurred. See 26 Pa. Cons. Stat. Ann. S 1-609.

7

Pennsylvania law to obtain just compensation, we agree with the District Court that their takings claim is not ripe.

Even if the plaintiffs' takings claim were ripe, the defendants' actions do not amount to a taking. The plaintiffs argue the two liens amounted to a regulatory taking because the liens forced them to reduce the sale price for their properties and caused them financial distress. However, a regulatory taking occurs only when the government's action deprives a landowner of all economically viable uses of his or her property. See Lucas v. South Carolina Coastal Council, 505 U.S. 1003, 1019 (1992).

A municipal lien does not deprive the landowner of all economically viable uses of the property. Rather, a lien is merely "a charge upon property by which a lien creditor has the right to execute on that property in order to satisfy a debt or other obligation." Unity Sav. Ass'n v. Am. Urban Sci. Found., 337 Pa. Super. 470, 474, 487 A.2d 356, 358 (1984). Under Pennsylvania law, the filing of a lien does not affect the debtor's use of that property until foreclosure. See Winpenny v. Krotow, 574 F.2d 176, 177 (3d Cir. 1978) (citing 53 Pa. Stat. Ann. S 7181). Though the liens in the case at hand may have prevented the plaintiffs from entering into certain transactions, they did not foreclose all economically viable uses of the land. Therefore, we agree with the District Court that the imposition of the liens did not constitute a taking.3

B. Due Process Claim

The plaintiffs also allege that the imposition of the two liens, one for $25,000 and the other for $250,000, violated their due process rights under the Fourteenth Amendment. The District Court held that these claims were barred by the two-year statute of limitations for claims brought under

_____

3. We are compelled to note that we regard the imposition of the liens as of questionable propriety; at argument, counsel for the defendants attempted to explain why the Township resorted to the liens, but offered no legal authority to justify them. The liens imposed for anticipated non-payment for municipal improvements may have violated the Municipal Lien Code, 53 Pa. Cons. Stat. Ann. SS 7101 et seq.

8

42 U.S.C. S 1983. The court specifically ruled that the continuing violations doctrine did not apply because the defendants' last affirmative act occurred in 1993 with the imposition of the second lien.

As the plaintiffs concede, the applicable statute of limitations for their S 1983 claims is two years. See Sameric Corp. of Delaware v. City of Philadelphia, 142 F.3d 582, 599 (3d Cir. 1998). They argue, however, that the continuing violations doctrine should have been applied to toll the limitations period because the defendants engaged in a "continuing campaign of affirmative acts" that interfered with their substantive due process rights. Br. of Appellants at 23-24.4

The continuing violations doctrine is an "equitable exception to the timely filing requirement." West v. Philadelphia Elec. Co., 45 F.3d 744, 754 (3d Cir. 1995). Thus, "when a defendant's conduct is part of a continuing practice, an action is timely so long as the last act evidencing the continuing practice falls within the limitations period; in such an instance, the court will grant relief for the earlier related acts that would otherwise be time barred." Brenner v. Local 514, United Bhd. of Carpenters and Joiners of Am., 927 F.2d 1283, 1295 (3d Cir. 1991).

In order to benefit from the doctrine, a plaintiff must establish that the defendant's conduct is "more than the occurrence of isolated or sporadic acts." West, 45 F.3d at 755 (quotation omitted). Regarding this inquiry, we have recognized that courts should consider at least three factors: (1) subject matter -- whether the violations constitute the same type of discrimination, tending to connect them in a continuing violation; (2) frequency -- whether the acts are recurring or more in the nature of isolated incidents; and (3) degree of permanence-- whether the act had a degree of permanence which should trigger the plaintiff 's awareness of and duty to assert his/her

_____

4. The District Court noted that the plaintiffs appeared to assert both procedural and substantive due process violations. Plaintiffs do not argue on appeal that their procedural due process rights were violated, so we will limit ourselves to the substantive due process claim.

9

rights and whether the consequences of the act would continue even in the absence of a continuing intent to discriminate. See id. at 755 n.9 (citing Berry v. Board of Supervisors of Louisiana State Univ., 715 F.2d 971, 981 (5th Cir. 1983)). The consideration of "degree of permanence" is the most important of the factors. See Berry, 715 F.2d at 981.

The continuing violations doctrine has been most frequently applied in employment discrimination claims. See, e.g., West, 45 F.3d 744; Bronze Shields, Inc., v. New Jersey Dept. of Civil Serv., 667 F.2d 1074, 1081 (3d Cir. 1981); Jewett v. Int'l Tel. and Tel. Corp., 653 F.2d 89, 91 (3d Cir. 1981). However, this has not precluded the application of the doctrine to other contexts. See Brenner, 927 F.2d 1283 (applying the doctrine to a claim brought under the National Labor Relations Act); Centifanti v. Nix, 865 F.2d 1422, 1432–33 (3d Cir. 1989) (applying the doctrine to a procedural due process claim brought under S 1983).

At issue in this case is whether this equitable doctrine should be applied to toll the statute of limitations for the plaintiffs' substantive due process claim.[5] The plaintiffs

_____

5. After oral argument, we requested letter briefs from the parties to address, inter alia, the issue of the applicability of the continuing violations doctrine to substantive due process claims generally. The submissions of both parties were comprehensive and we express our appreciation. Plaintiffs argued that our decision in Sameric Corp. of Delaware v. City of Philadelphia, 142 F.3d 582, 599–600 (3d Cir. 1998), accepted that the continuing violations doctrine could be applied to substantive due process claims but merely held that the evidentiary record did not support its application to the facts of the case. The Township disputed this interpretation of Sameric  and argued that the doctrine should not be extended to apply to substantive due process claims.

After consideration of the jurisprudence on the continuing violations doctrine, we do not find it necessary to adopt a per se rule of its applicability to substantive due process claims. Most importantly, the doctrine is an equitable one and requires a factual analysis that will be different for each case. Therefore, we will limit ourselves to whether the continuing violations doctrine should apply to the plaintiffs' substantive due process claim in the case at hand.

appear to offer two theories for application of the continuing violations doctrine here. First, they argue that the two municipal liens were continuing violations of their substantive due process rights until they were either lifted or expunged. Specifically, the $25,000 lien remained in effect until July 13, 1998, when it was expunged by a bankruptcy judge. The $250,000 lien was in place until July 1, 1997 at the earliest, when Eastgate negotiated its bankruptcy reorganization plan which included a $30,000 payment to the Township for settlement of that lien. Therefore, according to the plaintiffs, their substantive due process claim was timely raised because their complaint was filed on June 25, 1999.

We disagree with the plaintiffs' interpretation of a continuing violation and therefore reject this theory. The focus of the continuing violations doctrine is on affirmative acts of the defendants. See Delaware State College v. Ricks, 449 U.S. 250, 258 (1980); Sameric, 142 F.3d at 599; 287 Corporate Center Assoc. v. Township of Bridgewater , 101 F.3d 320, 324 (3d Cir. 1996). The mere existence of the liens does not amount to a continuing violation. Neither was the Township's refusal to remove the lien an affirmative act of a continuing violation.

The cases cited by the plaintiffs do not require a different result. In United States v. Dickinson, 331 U.S. 745 (1947), a landowner brought a claim against the federal government seeking compensation for flooding of lands that had been authorized by the government. The government argued that the claim was time-barred but the Supreme Court disagreed. The Court held that the flooding was a continuous event and therefore the limitations period began to run when the flooding had stabilized, rather than when the flooding first began. See id. at 749. Dickinson was a unique situation in which the physical taking of property was not complete until the flooding had stabilized. We have previously declined to extend its holding to toll the running of a limitations period for a substantive due process claim, see 287 Corporate Center Assoc., 101 F.3d at 324, and we similarly decline to extend its holding here.

The plaintiffs also cite to the decision in Gordon v. City of Warren, 579 F.2d 386 (6th Cir. 1978). In that case, a

11

developer had been prevented from completing construction of an apartment complex by a city ordinance that was later held to be unconstitutional. The Court of Appeals held that the developer's subsequent takings claim was not time-barred because the alleged wrong was the "continuing course of action which made it impossible for the plaintiffs to enjoy the full use of their property." Id.  at 391.

The Sixth Circuit has since declined to follow Gordon, see Kuhnle Bros. v. County of Geauga, 103 F.3d 516, 521 n.4 (6th Cir. 1997), as have other courts of appeals, see, e.g., Ocean Acres Ltd. v. Dare County Bd. of Health, 707 F.2d 103, 106 (4th Cir. 1983). In Ocean Acres, the Fourth Circuit reaffirmed that "[a] continuing violation is occasioned by continual unlawful acts, not continual ill effects from an original violation." Id. (quotation omitted). This conforms with our understanding of the continuing violations doctrine, see Sameric, 142 F.3d at 599, and we see no reason to depart from it. Therefore, we reject the plaintiffs' first theory for application of the continuing violations doctrine.

The plaintiffs' second theory is that the Township engaged in a campaign of harassment against them that extended beyond the imposition of the two municipal liens. In particular, they identified the following five acts that fell within the two-year limitations period in their Memorandum of Law in Opposition to the Motion to Dismiss submitted to the District Court:

(1) On July 1, 1997, as part of Eastgate Corporation's Plan of Reorganization in bankruptcy, the parties negotiated a $30,000 payment from Eastgate to the Township in return for a discharge of the $250,000 municipal lien imposed on the Palmer Business Park property. Although this $30,000 payment was made, the Township later requested an additional payment of $23,000 before the lien was discharged. This additional request allegedly violated 11 U.S.C. S 1141.

(2) In August 1997, the Township required lot purchaser Lone Star Steakhouse to build a driveway to the Tic-Toc Diner as a condition to issuing a building permit. As a result, Eastgate was compelled to reduce the price

12

of the lots it was selling to Lone Star Steakhouse by $25,000.

(3) In May 1998, the Township required Eastgate to fund the installation of a stop light in or near Lot 11. Consequently, Eastgate was compelled to reduce the sale price of Lot 11 by $75,000.

(4) In January 1999, the Township required purchasers of Lot 11 to pay $5,000 to the Township for the installation of stoplights as a condition of issuing building permits.

(5) On February 13, 1999, the Township sent Eastgate a bill for engineer fees related to a September 1994 inspection of the Palmer Business Park property. Eastgate claimed it was not responsible for this bill, which was sent over five years after the inspection took place.

App. at 155-156. In addition, the plaintiffs argued before us that the Township has continued to harass them by filing a petition to the Court of Common Pleas of Northampton County on December 15, 2000 requesting further improvements. The plaintiffs contend that they should be allowed to amend their complaint to include these and other allegations.

Although these acts fall within the two-year limitations period, we must consider whether they are "isolated, intermittent acts" or part of a "persistent, on-going pattern." West, 45 F.3d at 755. In doing so, we will consider the three factors identified in Berry v. Board of Supervisors of Louisiana State Univ., 715 F.2d 971, 981 (5th Cir. 1983). First, with regard to the "subject matter" of the violations, we note that these acts, except for the first one, appear to be unrelated to the imposition of the liens. The plaintiffs attempt to link these acts by characterizing them as a general interference with property rights. However, our substantive due process jurisprudence has always focused on the particular acts of the defendant, and not a general interference with property rights. See, e.g., Woodwind Estates, Ltd. v. Gretkowski, 205 F.3d 118, 125 (3d Cir. 2000) (considering the alleged delay of permit approval for subdivision plans); Blanche Road Co. v. Bensalem

13

Township, 57 F.3d 253, 268 (3d Cir. 1995) (considering the intentional blocking or delay of the issuance of permits for reasons unrelated to the merits of the permit application). Indeed, the plaintiffs argued at oral argument that each of these acts was an independent violation of their substantive due process rights and therefore individually actionable. If so, then the appropriate course of action was to bring a new S 1983 claim with respect to these alleged harassments instead of trying to tack them on to their existing claim.

In this respect, this case is not unlike the situation that was before us in Sameric, 142 F.3d 582. In that case, a theater owner alleged substantive due process violations against the City of Philadelphia and various city officials for improperly designating the theater as an historic building and improperly denying a permit to demolish the theater. Although the denial of the demolition permit occurred outside the applicable two-year statute of limitations, the owner argued that the statute should be tolled because the denial of the permit was related to the historical designation and the owner had continued to dispute the historical designation in state court. We rejected this argument, noting that the denial of the permit gave rise to an independent cause of action and should have been pursued as such. Thus, we held that the continuing violations doctrine could not be applied to revive the claim involving the permit denial. See id. at 598-600. Because the case at hand is similar to the situation in Sameric, the first Berry factor weighs against finding a continuing violation.

With regard to the "frequency" of the acts, we note that courts have never set a specific standard for determining how close together the acts must occur to amount to a continuing violation. The plaintiffs assert on appeal that defendants engaged in a campaign of harassment that began as early as 1987, became exacerbated with the imposition of the liens in October 1992 and March 1993, and continued throughout the mid and late 1990s. Many of the alleged harassing acts deal with routine dealings between a land developer and a board of supervisors that would not amount to violations of substantive due process. In any event, this would be a different due process claim than that pled in the complaint, which was confined to the

14

imposition of the liens. The type of acts that would satisfy the "frequency" factor of the Berry inquiry must at least be acts of substantially similar nature to those which were the basis of the original claim.

Turning to the third Berry factor -- whether the acts had a "degree of permanence" which should trigger the plaintiff 's awareness of and duty to assert his/her rights -- we must consider the policy rationale behind the statute of limitations. That is, the continuing violations doctrine should not provide a means for relieving plaintiffs from their duty to exercise reasonable diligence in pursuing their claims. See Nat'l Adver. Co. v. City of Raleigh , 947 F.2d 1158, 1168 (4th Cir. 1991); Ocean Acres, 707 F.2d at 107. In the case at hand, the plaintiffs were aware of the wrongfulness of the liens when the liens were imposed in 1992 and 1993. Therefore, the plaintiffs should have brought a claim to strike the liens in state court or filed a S 1983 claim within the applicable limitations periods. To allow the plaintiffs to proceed with their substantive due process claim now would be unfair to the Township and contrary to the policy rationale of the statute of limitations. See United States v. Richardson, 889 F.2d 37, 40 (3d Cir. 1989) ("Limitations periods are intended to put defendants on notice of adverse claims and to prevent plaintiffs from sleeping on their rights."). Therefore, this factor strongly weighs against applying the continuing violations doctrine.

Balancing the equities of the case, we conclude that the continuing violations doctrine does not relieve plaintiffs from the statute of limitations for the substantive due process claim. Therefore, we agree with the District Court that the substantive due process claim was untimely.

C. Leave to Amend the Complaint

We also conclude that the court did not abuse its discretion in denying plaintiffs leave to amend their complaint. Although Fed. R. Civ. P. 15(a) states that leave to amend "shall be freely given when justice so requires," we have held that leave to amend need not be granted when amending the complaint would clearly be futile. See Maio, 221 F.3d at 500-01 n.19. It is evident that allowing the plaintiffs in the case at hand to amend their complaint

15

would not have saved their takings claim. As for the substantive due process claim, we have held that the additional factual allegations offered in their Memorandum of Law in Opposition to the Motion to Dismiss did not constitute a continuing violation. Therefore, that claim would not be able to overcome the statute of limitations, and any amendment of the complaint would have been futile.6

III.

CONCLUSION

For the reasons set forth above, we will affirm the District Court's order dismissing plaintiffs' action.

A True Copy:
Teste:

     Clerk of the United States Court of Appeals
     for the Third Circuit

_____

6. The plaintiffs also contend in their brief that the District Court erred
in characterizing their complaint as already amended. While the court may have erred in this regard, we do not see this error as warranting a reversal.

16