In re NHI, INC., a Delaware Corporation, Debtor.

NHI, Inc., Plaintiff,

v.

FleetBoston Financial Corporation, KMR Management, Inc., Robert Riesner and Waring S. Justis, Jr., Defendants.

Bankruptcy No. 02–10651(PJW).
Adversary No. 04–52879(PJW).

United States Bankruptcy Court, D. Delaware.

Feb. 11, 2005.

James C. Sargent, Guy A. Donatelli, Scot R. Withers, Lamb McErlane PC, West Chester, PA, Stephen W. Spence, Phillips Goldman & Spence, P.A., Wilmington, DE, for NHI, Inc.

Stuart M. Brown, Denise Seastone Kraft, Mark D. Olivere, Edwards & Angell, LLP, Wilmington, DE, for Defendants FleetBoston Financial Corporation, KMR Management, Inc., Robert Reisner and Waring S. Justis.

## MEMORANDUM OPINION

PETER J. WALSH, Bankruptcy Judge.

This opinion is with respect to defendants' motion (Doc. # 51) to dismiss NHI, Inc.'s second amended complaint (Doc. # 45). For the reasons set forth below, the Court will deny the motion.

## BACKGROUND

NHI, Inc. ("NHI") was the first pre-manufactured home-builder in Delaware and conducted a successful manufacturing business for more than thirty years. Over time, NHI and its affiliated companies and related entities greatly increased their indebtedness to their bank, Mercantile Safe Deposit and Trust Company ("Mercantile"). All outstanding debt owed to Mercantile by NHI and its affiliated companies was cross-collateralized.

As of late 1999, Mercantile considered NHI to be in default under various technical, non-monetary covenants of the loans. In August 2000, NHI learned that Mercantile was considering calling the loans as a result of these defaults. As an alternative to calling the loans, Mercantile insisted on October 6, 2000 that NHI retain a management consultant and strongly suggested defendants KMR Management, Inc. ("KMR"), Robert Riesner ("Riesner") and Waring S. Justis ("Justis") (collectively, "Defendants") be hired in this role. According to NHI, Scott Krieger ("Krieger"), Mercantile's workout manager, assured NHI that KMR, Riesner and Justis were "turn-around" consultants, as opposed to "liquidation guys." (Doc. # 45, ¶ 25.)

On October 19, 2000, NHI entered into a consulting agreement with KMR, Riesner and Justis. Under the consulting agreement, KMR, Riesner and Justis agreed to provide NHI with professional management for the purposes of stabilizing NHI's financial condition and perpetuating NHI's business. KMR, Riesner and Justis undertook to act as fiduciaries, assumed positions of responsibility and undertook a duty of loyalty with respect to NHI as NHI's agents. KMR, Riesner, and Justis further assumed the complete control, responsibility and authority for managing the business of NHI. In return, NHI agreed to pay KMR specified hourly rates for services rendered.

NHI did not survive. On March 1, 2002, it filed a petition for relief under chapter 11 of title 11 of the United States Code, 11 U.S.C. §§ 101 *et. seq.* (the "Bankruptcy Code"), and NHI's business was subsequently liquidated. On February 27, 2004, NHI commenced the instant action seeking to recover losses suffered as a result of Defendants' alleged failure to comply with the terms set forth in the consulting agreement and for other alleged wrongdoings.[1]

The complaint alleges that after assuming control of NHI, KMR, Riesner, and Justis embarked on a short-sighted and result-oriented management scheme to scuttle and liquidate NHI in direct breach of the consulting agreement and in violation of their fiduciary duties and obligations of loyalty. The allegations by NHI contain numerous statements of actions taken by Defendants in which they sacrificed NHI's interests to the benefit of both Mercantile and KMR. Such actions, which NHI alleges included a failure to pay vendors and suppliers, resulted in numerous lawsuits against NHI filed by ven-

---

1. In addition to Defendants, the complaint names FleetBoston Financial Corporation ("Fleet") as a defendant. According to the complaint, KMR was a wholly-owned subsidiary of Progress Financial Corporation who, NHI alleges, participated in the day-to-day running of NHI with Riesner and Justis. Fleet is the successor to Progress Financial Corporation.

dors, suppliers and customers beginning in September 2001. As a result, NHI asserts that it was unable to secure supplies and materials from vendors, which resulted in NHI having to resort to alternate and more expensive sources of supplies and materials.

NHI alleges that by February 2002, as a result of the gross mismanagement of it by KMR, Riesner and Justis, it was in such dire financial straits that it was not able to refinance or sell its operations as a going concern. On February 6, 2002, Mercantile demanded payment on all of NHI's loans and lines of credit. NHI terminated its manufacturing operations on February 19, 2002. Thereafter, on February 26, 2002, the members of the founding family of NHI, the Mervines, allegedly found themselves in such financial distress that they entered into an agreement with Mercantile that over the following twenty months would settle NHI's debt with Mercantile, satisfy Mercantile's liens on the assets of NHI and the Mervine family members' personal residences, and release Mercantile from all liability to NHI.

On June 1, 2004, Defendants filed a motion to dismiss the original complaint. NHI responded to the motion and attached an amended complaint to its response which by stipulation of the parties was deemed filed as of July 8, 2004.

Defendants filed a motion to dismiss the first amended complaint on August 5, 2004 arguing, among other things, that the action was barred by releases granted to Mercantile and its agents. According to Defendants, NHI's first amended complaint sufficiently alleged that Defendants were agents of Mercantile and were thereby covered by the releases. At a status conference hearing held on December 3, 2004, the Court heard argument regarding Defendants' position that the allegations in the first amended complaint constituted a statement affirming Defendants' agency status. NHI represented that it was not its intention to allege that Defendants were agents of Mercantile. Accordingly, the Court permitted NHI to file a second amended complaint to delete the paragraph that the Court found alleged an agency relationship. On December 10, 2004, NHI filed the second amended complaint (the "Complaint").

The Complaint contains counts for breach of contract, breach of covenant of good faith and fair dealing, gross negligence, breach of fiduciary duty, fraud, waste of corporate assets, tortious interference with contract and prospective business advantage, fraudulent conveyances pursuant to federal and state law, and avoidance of preferences pursuant to Bankruptcy Code § 547.

Defendants filed the instant motion arguing that the Complaint should be dismissed for the following reasons: (1) as pled by NHI, Defendants were acting as agents of Mercantile such that Defendants are included in certain releases granted to Mercantile pre-petition and post-petition; (2) NHI's representations in the chapter case cash collateral agreement preclude the instant action because they constitute judicial admissions so that NHI is judicially estopped from maintaining this action; and (3) the preference action is not properly pled against Fleet, Riesner or Justis. NHI contests all of these assertions.

## DISCUSSION

*Releases*

Defendants argue that two releases shield them from liability. The first is contained in the pre-petition agreement the Mervines entered into with Mercantile on February 26, 2002. It includes the following provision:

In order to induce [Mercantile] to enter into this agreement, each of the *Obligors forever releases and discharges [Mercantile] and [Mercantile]'s officers, directors, employees, attorneys, and agents* (collectively, the "Released Parties") from any and all claims, causes of action, suits and damages (including claims for attorneys' fees and costs) which any of the Obligors, jointly or severally, ever had or may now have of any kind or nature against any of the Released Parties arising out of or related in any way to any of the Loans, the Loan Documents, the Obligations or the Collateral or the administration thereof or this Agreement, whether known or unknown, including but not limited to any and all claims based upon or relying on any allegations or assertions of duress, illegality, unconscionability, bad faith, breach of contract, regulatory violations, improper control of the companies or their affairs, negligence, misconduct, or any other tort, contract or regulatory claim of any kind or nature. This release is intended to be final, irrevocable and immediate and is not subject to the satisfaction of any conditions of any kind. (Doc. # 52, Exh. A, § 20, pp. 11–12 (emphasis added).) The term "Obligors" is defined in the agreement to include NHI. (*Id.* at 1.) The second release that allegedly shields Mercantile and its agents is nearly identical to the above provision and is contained in a post-petition agreement entered into by NHI and Mercantile on October 30, 2003. (Doc. # 52, Exh. C, § 2, p. 1.) Thus, if reading NHI's pleadings in the light most favorable to it leads to the inescapable conclusion that Defendants were Mercantile's agents, Defendants would be covered by the releases and this action should be dismissed.

"A motion to dismiss pursuant to [Federal Rule of Civil Procedure] 12(b)(6) may be granted only if, accepting all well-pleaded allegations in the complaint as true and viewing them in the light most favorable to plaintiff, the plaintiff is not entitled to relief." *Cowell v. Palmer Township*, 263 F.3d 286, 290 (3d Cir.2001) (citation omitted). The Court should not grant a Rule 12(b)(6) motion "unless it appears beyond doubt that the plaintiff can prove no set of facts in support of [its] claim which would entitle [it] to relief." *Conley v. Gibson*, 355 U.S. 41, 45–46, 78 S.Ct. 99, 102, 2 L.Ed.2d 80 (1957). In *Conley*, the Supreme Court specified that "[t]he Federal Rules reject the approach that pleading is a game of skill in which one misstep by counsel may be decisive to the outcome and accept the principle that the purpose of pleading is to facilitate a proper decision on the merits." *Id.* at 48, 78 S.Ct. 99.

Defendants assert that "[t]he first issue to be decided by the Court in this Motion is whether [NHI] plead [sic] that Defendants were Mercantile's agents. Clearly, [NHI] has pled agency." (Doc. # 60, p. 9.) According to Defendants, the Complaint contains numerous allegations that amount to an assertion by NHI that Defendants were acting as agents for Mercantile. Defendants' motion states its case as follows:

> As alleged in the [Complaint], KMR, Riesner and Justis did not operate independently and for the benefit of NHI. Instead, KMR, Riesner and Justis acted as Mercantile's agents. Specifically, [NHI] in its [Complaint] alleges that: [2]
>
> ● KMR, Riesner and Justis **made their primary priorities Mercantile's collateral realization** and

---

**2.** Defendants bullet points appear to be quotations from the Complaint but they are not. As noted in the footnotes below, in many respects the bullet points misstate the allegations of the Complaint.

KMR's collection of exorbitant and extorted consulting fees, while at the same time relegating NHI's business operations and viability as a going concern to distant secondary priorities, in direct contravention of the Consulting Agreement. [Second Amended Complaint ¶ 32.][3]

- Riesner and/or Justis were **in contact with Mercantile at least daily** during the term of the Consulting Agreement. [Second Amended Complaint ¶ 33.]

- KMR, Riesner and Justis continued on a concentrated course of action to pay Mercantile and KMR at the fastest possible rate without regard to the continuation of NHI's business, while stripping NHI of assets. **In collaboration with Krieger (Mercantile's workout manager),** KMR, Riesner and Justis discontinued paying NHI's vendors, suppliers, health care claims and taxing authorities, removed critical employees from plant operations, shipped homes out of the plant prior to completion and with substantial defects, failed to complete homes in the field and **focused on short-term returns to Mercantile** and KMR, without any concern for the long-term impact on NHI, which were in fact ruin-

ous to NHI's viability as a going concern. [Second Amended Complaint ¶ 46.]

- At the same time, although NHI was still only in technical default with Mercantile, KMR, Riesner and Justis systematically made payments to Mercantile the day after late fees and penalties were incurred. According to NHI, it was apparent that KMR, Riesner and Justis were not concerned with NHI's ability to continue as a going concern—rather, **the sole concern of KMR, Riesner and Justis was that Mercantile and KMR be paid.** [Second Amended Complaint ¶ 47.][4]

- The [Complaint] alleges that from October 2000 through January 2002, KMR, Riesner and Justis grossly mismanaged NHI's business; **made decisions which maximized cash flows to Mercantile** and KMR, while destroying NHI's relationships with its customers, suppliers, contractors, employees, etc., with the obvious result of destroying NHI as a viable going concern; violated the Consulting Agreement; breached their fiduciary duty and duty of loyalty by—rather than providing "turn around" management—de-

3. The relevant portion of the Complaint actually reads:

KMR, Riesner and Justis made their primary priorities the paying down of NHI's debt to Mercantile and the collection of exorbitant and extorted consulting fees for KMR, while at the same time relegating NHI's business operations and viability as a going concern to distant secondary priorities, in direct contravention of the Consulting Agreement.
(Doc. # 45, ¶ 32.)

4. The relevant portion of the Complaint actually reads:

At the same time, although NHI was still only in technical default with Mercantile, KMR, Riesner and Justis systematically made payments to Mercantile the day after late fees and penalties were incurred. It was apparent that KMR, Riesner and Justis were not concerned with NHI's ability to continue as a going concern—rather, the sole concern of KMR, Riesner and Justis was that Mercantile and KMR be paid.
(Doc. # 45, ¶ 47.)

vising a stealth plan to strip NHI of all cash and assets before running NHI into liquidation, all for the sole benefit and at the direction of Mercantile, and to the extreme detriment and prejudice of NHI and its shareholders and creditors. [Second Amended Complaint ¶ 59.][5]

- KMR, Riesner and Justis engaged in a scheme to defraud and to raid NHI for the purposes of stripping assets in satisfaction of bank debt and running down NHI to the point where NHI could only be liquidated for the benefit of Mercantile rather than turning the company around. [Second Amended Complaint ¶ 103.][6]

- Mercantile insisted on NHI hiring KMR, and then KMR placed NHI into an insolvent condition in a fashion designed to protect only Mercantile. [Second Amended Complaint ¶¶ 104, 111.][7]

- KMR, Riesner and Justis engaged in a scheme to waste the assets of NHI in order to liquidate it for the benefit of Mercantile. [Second Amended Complaint ¶ 110.][8]

(Doc. # 52, pp. 6–7 (emphasis in original).)

From these paraphrased allegations of the Complaint, Defendants argue that the

5. Significantly, there is no mention in the Complaint that any of the activity was at the direction of Mercantile. Similarly, the Complaint actually alleges that the activity was for the sole benefit of Mercantile, KMR, Riesner and Justis. The relevant portion of the Complaint actually reads:

From October 2000 through January 2002, KMR, Riesner and Justis grossly mismanaged NHI's business; made decisions which maximized cash flows to Mercantile and KMR while destroying NHI's relationships with its customers, suppliers, contractors, employees, etc., with the obvious result of destroying NHI as a viable going concern; violated the Consulting Agreement; breached their fiduciary duty and duty of loyalty by—rather than providing "turn around" management—devising a stealth plan to strip NHI of all cash and assets possible before running NHI into liquidation, all for the sole benefit of Mercantile, KMR, Riesner and Justis, and to the extreme detriment and prejudice of NHI and its shareholders and creditors.

(Doc. # 45, ¶ 59.)

6. The relevant portion of the Complaint actually reads:

On information and belief, KMR through Riesner and Justis engaged in a scheme to defraud and to raid NHI for the purposes of stripping assets in satisfaction of bank debt and running down NHI to the point where NHI could only be liquidated for the benefit

of Mercantile rather than turning the company around, as represented.

(Doc. # 45, ¶ 103.)

7. The relevant portion of the Complaint actually reads:

KMR, Riesner, and Justis took steps to implement their fraudulent purpose including: (1) Mercantile insisting on NHI's hiring KMR; (2) Riesner and Justis knowingly failing to take any action which would permit NHI to continue as a going concern; (3) placing Justis in a position to perform the duties which a Chief Executive Officer and Chief Operating Officer would perform without any intention of having him act in the best interests of NHI; (4) the making of a series of management decisions by KMR, Riesner and Justis, which had the effect of running down NHI's business; (5) insisting on the surrender of voting rights of NHI's shareholders; (6) refusing to supply the NHI Board of Directors with financial information about the company or to involve it in any way in its present operations; (7) placing NHI into an insolvent condition in a fashion designed to protect only Mercantile; and (8) siphoning off approximately $1.9 million to KMR in fees rather that [sic] utilizing those assets to assist NHI's business operations.

(Doc. # 45, ¶¶ 104, 111.)

8. The relevant portion of the Complaint actually provides:

Complaint alleges that Defendants were Mercantile's agents and are thereby protected by the releases provided to Mercantile and its agents. Defendants present their position as follows:

> Here, the scope of the release and the released parties is unambiguous. The Debtor released Mercantile **and its agents**. The Debtor in the [Complaint] repeatedly alleges in paragraph after paragraph that Defendants acted as Mercantile's agents in collaboration with Krieger (Mercantile's workout manager), by consulting with Mercantile on a daily basis, acting for Mercantile's benefit, focusing on short-term returns to Mercantile, making their primary priorities Mercantile's collateral realization, made decisions which maximized cash flows to Mercantile, all in a manner designed to protect Mercantile. [Second Amended Complaint ¶¶ 32, 33, 47, 59, 104, 110, 111].... For the purpose of the Motion to Dismiss, the Court must take such allegations of agency as true.

(Doc. # 52, pp. 20–21 (emphasis in original).) Defendants amplify this position with legal authority in their reply as follows:

> The allegations in NHI's [Complaint] clearly establish, if such allegations are taken as true, that the Defendants had "the power to act on behalf of the principal (Mercantile)." *J.E. Rhoads & Sons, Inc.*, 1988 WL 32012 at *4. NHI's claims against the Defendants are premised on the very notion that they acted "at the behest and for the benefit and for the benefit of the principal (Mercantile)." *J.E. Rhoads & Sons, Inc.*, 1988 WL 32012 at *4.

(Doc. # 60, p. 6.)

In my view, Defendants' conclusion that the Complaint alleges an agency relationship is a misapplication of the law and the facts. I start with a brief statement of the law.

■ "An agency relationship is created when one party consents to have another act on its behalf, with the principal controlling and directing the acts of the agent." *Fisher v. Townsends, Inc.*, 695 A.2d 53, 57–58 (Del.1997) (citations omitted). "Agency is the relationship which results from the manifestation of consent by one person to another that the other shall act on his behalf and subject to his control, and consent by the other so to act." *Sutter Opportunity Fund 2 LLC v. Cede & Co.*, 838 A.2d 1123, 1128 (Del.Ch. 2003) (quoting Restatement (First) of Agency § 1(1) (1933)). "The principal must manifest, by words or conduct, that the agent shall work for him.... The right to control the conduct of an agent is the test of agency." *J.E. Rhoads & Sons, Inc. v. Ammeraal, Inc.*, 1988 WL 32012, at *4 (Del.Super.Ct. March 30, 1988) (citations omitted).

■ As mentioned above, at this stage of the proceedings the Court must not only, as Defendants assert, accept the allegations as true, it must also "view[ ] them in the light most favorable to [NHI] ...." *Cowell*, 263 F.3d at 290. Applying these standards to the allegations in the Complaint precludes Defendants' request for dismissal. The plain language of the allegations in the Complaint does not support the conclusion that Mercantile in any way controlled Defendants or that any party expressly or impliedly consented to an agency relationship. For example, Defendants argue that "NHI's description of the relationship between the Defendants and

---

On information and belief, KMR through Riesner and Justis engaged in a scheme to waste the assets of NHI to the point where

NHI could only be liquidated for the benefit of Mercantile.
(Doc. # 45, ¶ 110.)

Mercantile, in which 'Riesner and/or Justis were in contact with Mercantile at least daily during the term of the Consulting Agreement,' (Second Amended Complaint at ¶ 34) is consistent with an agency relationship." (Doc. # 60, pp. 6–7 (citations omitted).) While it is true that one can imagine daily contact being an aspect of an agency relationship, that by itself is not sufficient to establish that Mercantile exercised control over Defendants.

I find that reading the allegations [9] in the light most favorable to NHI, the following conclusions can be drawn regarding Defendants' conduct: (1) Defendants may have believed that Mercantile would proceed with a foreclosure action absent paying down the bank debt and otherwise courting favor with Mercantile's interests; (2) Defendants took action that benefitted Mercantile with the belief that it would give comfort to Mercantile in continuing to support NHI's attempt to reorganize; (3) Defendants favored Mercantile in order to court favor with Mercantile to obtain future referrals; or (4) Defendants were incompetent in what they were doing. Indeed, as to the latter possibility, I note that the Complaint contains a negligence count. It alleges that Defendants "proved to be incompetent in running the day-to-day operations of NHI's manufacturing business." (Doc. # 45, ¶ 50.) It further alleges that Defendants were "grossly negligent" by, inter alia, "knowingly reducing NHI's obligations to Mercantile to the point where Mercantile would compel the filing of a bankruptcy." (*Id.* at ¶ 91.)

As noted above, in its original form the complaint did contain one paragraph that I believe asserted an agency relationship. By an October 8, 2004 letter to counsel, I noted that there were a number of allegations in the complaint that suggested an agency relationship without actually asserting it. However, I noted that Paragraph 33 of the original complaint was rather specific in alleging that Defendants "served at the direction and pleasure of Mercantile." (Doc. # 17, Exh. B, ¶ 33.) At the December 3, 2004 hearing, the following exchange took place:

The Court: Let me put it succinctly. And I tried to be polite in my letter where I said—quoted from paragraph 33 of the complaint, and I said this sure sounds like an agency relationship to me. Let me put it bluntly. I conclude that that's an assertion of an agency relationship.

Now, in [NHI's] memorandum, docket number 40, you say on page 1, "The first amended complaint did not allege that the defendants were agents of Mercantile." On page 3, there's a statement, "Defendants were, in fact, not the agents of Mercantile."

And my simple question is which is it?

[NHI's counsel]: They were not, Your Honor.

The Court: Okay.

[NHI's counsel]: And nor do defendants in this case allege—at least they haven't to date—that they were defendants [sic]. And if Your Honor is concerned with paragraph 33 or 34 to the extent that you believe it alleges an agency relationship, I will amend the pleading to withdraw that allegation—

The Court: Very good. That's fine. Okay.

＊ ＊ ＊ ＊ ＊ ＊

The Court: Okay. Are you going to argue or attempt to prove that the defendants were agents of Mercantile in order to bring them within the release?

[Defendants' counsel]: It is not our intention to argue that the defendants

---

9. As stated in the Complaint, not as para- phrased by Defendants in their motion.

were agents of Mercantile. We—our case at this point—

The Court: Okay. Then this whole agency is a nonissue at this point.

(Case Doc. # 667, p. 6.)

Under the facts here it would be quite inappropriate to grant a motion to dismiss. As noted above, in discussing the standard courts should use in ruling on motions to dismiss, the Supreme Court cautioned that "[t]he Federal Rules reject the approach that pleading is a game of skill in which one misstep by counsel may be decisive to the outcome and accept the principle that the purpose of pleading is to facilitate a proper decision on the merits." *Conley*, 355 U.S. at 48, 78 S.Ct. 99. Also as noted above, when read in the light most favorable to NHI, the remaining allegations support a number of different conclusions as to what motivated or explains Defendants' alleged conduct. For Rule 12(b)(6) purposes, it cannot be said that Defendants' conduct as alleged in the Complaint was premised on Mercantile's consent to have Defendants act on its behalf with Mercantile controlling or directing the conduct of Defendants. Thus, I conclude that the Complaint's allegations do not establish as a fact that Defendants were agents of Mercantile and beneficiaries of the releases granted to Mercantile's agents.

*Judicial Estoppel*

Defendants argue that NHI should be precluded by reason of judicial admissions and judicial estoppel from claiming wrongdoing on the part of Defendants due to representations made in the cash collateral agreement. Defendants articulate their position as follows:

> The Cash Collateral Agreement entered into by NHI and Mercantile affirms that NHI's pre-petition debt to Mercantile is enforceable, legal, binding, and NHI has no claims against Mercantile. NHI states that its pre-petition indebtedness to Mercantile "is secured by validly perfected first priority security interests, liens and mortgage liens." NHI also states that its pre-petition indebtedness is "fully secured and constitutes the legal, valid and binding obligations of the Debtor, enforceable in accordance with the terms of all applicable documents." Finally, NHI admits that "no offsets, defenses or counterclaims to the [pre-petition indebtedness to Mercantile] exist, and no portion of the [pre-petition indebtedness to Mercantile] is subject to avoidance or subordination pursuant to the Bankruptcy Code or applicable non-bankruptcy law."

> \* \* \* \* \* \*

> Because the Debtor makes such binding and conclusive judicial admissions, the Court necessarily must conclude, and without even the presentation of proof, that Mercantile and the Defendants are free from wrongdoing and that the Plaintiff is judicially estopped from pursuing Defendants for causes of action based on the alleged improper collection by Defendants of Plaintiff's pre-petition debt to Mercantile.

(Doc. # 52, pp. 14–15 (citations omitted).)

 "[A] party's assertion of fact in a pleading is a judicial admission by which it is normally bound throughout the course of the proceeding." *Elec. Mobility Corp. v. Bourns Sensors/Controls, Inc.*, 87 F.Supp.2d 394, 405 (D.N.J.2000) (citations omitted). "[T]o be binding, judicial admissions must be unequivocal." *Glick v. White Motor Co.*, 458 F.2d 1287, 1291 (3d Cir.1972) (citations omitted). "An unequivocal statement is one that is clear, unambiguous and expresses only one meaning." *Phila. Reinsurance Corp. v. Employers Ins. of Wausau*, No. 02–1943, 61 Fed.Appx. 816, 819, 2003 WL 1698892, at \*3 (3d Cir. March 31, 2003) (citing Web-

ster's Third New International Dictionary 2494 (4th ed.1976)).

The above quoted provisions from the cash collateral agreement are rather standard, simply having the debtor acknowledge the binding nature of the amount, perfection and priority of the prepetition secured debt that is not subject to offsets, defenses or counterclaims. But the Complaint does not contravene those acknowledgments. The Complaint does not allege any wrongdoing by Mercantile and alleges no cause of action against Mercantile. Pursuant to various orders entered in the bankruptcy case, NHI's assets were liquidated with most of the net proceeds paid over to Mercantile to pay down the pre-petition debt. So far as I know, the loan obligation has been substantially, if not fully, paid down and the Complaint does not seek any disgorgement of those payments. I am at a loss to understand the relevance of NHI's acknowledgments of its debt obligations to Mercantile to the Complaint's multiple allegations of wrongdoing by Defendants, entities and persons other than Mercantile.

This action challenges Defendants performance as turn-around consultant in a failed undertaking. While many of Defendants' actions involved Mercantile and the Complaint alleges that Mercantile benefitted from some of those actions, none of that contests the acknowledgments made by NHI in the cash collateral agreement. Therefore, I find that NHI is not precluded by the cash collateral agreement from making any of the allegations of wrongdoing by Defendants as set forth in the Complaint.

*Preference*

The final argument made by Defendants is that the Bankruptcy Code § 547 preference action should be dismissed as to Fleet, Riesner and Justis for failure to sufficiently plead the elements of a preference. This Court has recently described the pleading requirements as follows:

Rule 8(a) states "[a] pleading which sets forth a claim for relief ... shall contain ... a short and plain statement of the claim showing that the pleader is entitled to relief." Fed.R.Civ.P. 8(a). The Third Circuit Court of Appeals instructs that "[t]echnicalities are no longer of their former importance, and a short statement which fairly gives notice of the nature of the claim is a sufficient compliance with the requirements of the rules." *Cont'l Collieries, Inc. v. Shober,* 130 F.2d 631, 635 (3d Cir.1942). Therefore, a complaint will be sufficient if it "give[s] the defendant fair notice of what the plaintiff's claim is and the grounds upon which it rests," *Conley v. Gibson,* 355 U.S. 41, 47, 78 S.Ct. 99, 2 L.Ed.2d 80 (1957), and courts favor decisions on the merits rather than technicalities.

*TWA Inc. Post Confirmation Estate v. Golf Channel,* 305 B.R. 745, 746–47 (Bankr.D.Del.2004). With regard to preference actions, I have found that complaints must contain the following information: "(a) an identification of the nature and amount of each antecedent debt and (b) an identification of each alleged preference transfer by (i) date, (ii) name of debtor/transferor, (iii) name of transferee and (iv) the amount of the transfer." *TWA Inc. Post Confirmation Estate v. Marsh USA, Inc. (In re TWA Inc. Post Confirmation Estate),* 305 B.R. 228, 232 (Bankr. D.Del.2004) (citation omitted).

In pleading this preference count, the Complaint states:

During the one year period prior to the Petition Date (hereinafter the "Insider Preference Period"), KMR, Riesner and Justis received from NHI one or more transfers by check, wire transfer or

their equivalent (the "Transfers"), in the amounts and on or before the clear dates identified in Exhibit "B", attached hereto.

Each Transfer identified in Exhibit "B" hereto was directly to or for the benefit of KMR, Riesner and Justis.

\* \* \* \* \* \*

Fleet is liable for the above referenced transfers as successor in interest to Progress.

(Doc. # 45, ¶¶ 162–63, 170.) With respect to payments made from November 27, 2001 to the petition date, Exhibit B provides with respect to each transfer the name of the debtor company that made the payments, the party that received the payment, the check number, the check date, the invoice amount and the clear date. With respect to each payment made prior to November 27, 2001, Exhibit B identifies the transferee, the check date and the check amount. The name of the transferor is easily inferred. NHI is only required at this stage to provide Defendants with notice regarding its claim and the basis of the claim. If the facts are later developed to show that Fleet, Riesner and Justis did not receive any benefit from the payments then obviously NHI's requested relief will be denied as to them. But at this point NHI has alleged that they did benefit from the payments and NHI should be allowed to conduct discovery to determine how such payments benefitted those defendants, if at all.

For the foregoing reasons, Defendants' motion to dismiss the Complaint is denied.

## ORDER

For the reasons set forth in the Court's memorandum Opinion of this date, defendants' motion (Doc. # 51) to dismiss plaintiff's second amended complaint (Doc. # 45) is **denied**.

