J-S73018-17

**NON-PRECEDENTIAL DECISION – SEE SUPERIOR COURT I.O.P 65.37**

OSPREY PORTFOLIO, LLC : IN THE SUPERIOR COURT OF
: PENNSYLVANIA
Appellant :
:
v. :
:
MARIE MORAN, INDIVIDUALLY, AND AS :
HEIR TO PAUL F. MORAN, SR., JAMES :
RUSSELL AND PATRICIA RUSSELL :
:
Appellees : No. 656 MDA 2017

Appeal from the Order Entered March 21, 2017
in the Court of Common Pleas of Susquehanna County
Civil Division at No(s): 2016-00831

BEFORE:    OLSON, DUBOW, and STRASSBURGER,* JJ.

MEMORANDUM BY STRASSBURGER, J.:        **FILED FEBRUARY 16, 2018**

Osprey Portfolio, LLC (Osprey) appeals from the order staying the sheriff's sale in order to allow James and Patricia Russell (the Russells) the opportunity to file a complaint asserting adverse possession of the subject real property.  In addition, the Russells have also filed a motion to quash this appeal.  Upon review, we deny the motion to quash and affirm the trial court's order.

This case has a lengthy and tortured history, which the trial court has adeptly detailed in its 1925(a) opinion.

> On December 18, 2014 [Osprey] filed a mortgage foreclos[ure] action against Marie Moran[ and the Russells].  The foreclosure complaint related to a 0.33 acre parcel of real property in Little Meadows Borough, Susquehanna County.  The foreclosure complaint contended that the subject real property had been

---

*Retired Senior Judge assigned to the Superior Court.

encumbered by a 1994 mortgage and alleged that the amount of $27,754.05 was due and owing.

The subject real property was acquired by [] Marie Moran by a deed dated November 28, 1975, recorded in Susquehanna County Deed Book 365, at page 810. In that deed, the grantor[] conveyed the property to "Paul F. Moran, Sr. and Marie Moran, his wife, and Paul F. Moran, Jr., … as joint tenants with the full right of survivorship and not as tenants in common." In that particular conveyance, the real property was described as a "lane" and the grantor contended ownership had been obtained through adverse possession. Thereafter, on December 4, 1978, by deed recorded in Susquehanna County Deed Book 383, at page 574, William J. Lemon and Helen A. Lemon, his wife, conveyed the same property to "Paul F. Moran, Sr. and Marie Moran, his wife, and Paul F. Moran, Jr., … as joint tenants with full right of survivorship and not as tenants in common." The purpose of this deed was to confirm the right to the "lane" as set forth in the prior 1975 deed from grantor Hickey.

On September 23, 1994, a mortgage in the amount of $10,000 was purportedly executed by Paul F. Moran, Sr., [] Marie Moran and Paul F. Moran, Jr. The mortgage encumbered the subject real property. On October 5, 1994, the mortgage was recorded in the Susquehanna County Recorder's Office at Mortgage Book 372, at page 1115. The signatures on the mortgage were notarized by notary public Nancy J. Devine. This mortgage was later assigned to [Osprey].

On July 16, 2002, Paul F. Moran, Jr., and Nancy Moran, his wife, conveyed their interest in the subject real property to Paul F. Moran, Sr. and [] Marie Moran, his wife, by deed recorded in Susquehanna County in Deed Book 577, at page 310. Then, on November 10, 2010, Paul F. Moran Sr., and [] Marie Moran, his wife, executed a deed to themselves to the subject real property [which indicated that they] owned the real property as "tenants by the entirety." The record fails to disclose the purpose of this particular deed as it did nothing more than confirm the ownership of the real property that had been established in the prior deeds.

On November 16, 2011, [] Marie Moran entered into a consentable line agreement with her neighbors, [the Russells]. The Russells['] involvement in this litigation arises from the

consentable line agreement as a small portion of the real property (0.14 acres) was either recognized as being real property that the Russells had acquired through adverse possession or was conveyed gratuitously by Moran to the Russells for no reason whatsoever.

As to the Russells, in response to this mortgage foreclosure action, there is no dispute they never signed any mortgage relative to this real property. On January 5, 2015, the Russells filed an answer that contained a counterclaim in "quiet title" alleging that their interest in the real property was not secured by any mortgage. On January 26, 2015, Osprey filed preliminary objections to the counterclaim contending that any interest acquired by the Russells through the consentable line agreement would be junior to [Osprey's] mortgage lien that was acquired in 1994. On February 11, 2015, in response to the preliminary objections, the Russells again asserted that the real estate for which they had an interest was never subject to the mortgage. On April 21, 2015, [the trial c]ourt, through Senior Judge Linda Wallach Miller, sustained Osprey's preliminary objection and struck the Russells' counterclaim for quiet title with prejudice. As this litigation proceeded, the Russells have simply been bystanders as the only question presented was whether Marie Moran signed the mortgage document.

[]Marie Moran (hereinafter referred to as Moran) has denied that she executed the 1994 mortgage. Moran submitted a personal affidavit contending that she never signed the mortgage nor did she authorize anyone to sign it on her behalf. Moran also submitted an affidavit from her son, Paul F. Moran, Jr., who asserts that his mother did not sign the mortgage or authorize anyone to sign it on her behalf. Moran also submitted various examples of her signature and a handwriting exemplar to demonstrate that the signature on the mortgage differs from her actual signature. In response, Osprey submitted an affidavit from the notary public, Nancy Devine, which provides: "On September 23, 1994, I notarized the signatures of Paul F. Moran, Sr., Marie Moran, and Paul F. Moran, Jr. []."

Osprey filed for summary judgment contending that there was no issue of material fact regarding the execution of the mortgage. The [trial c]ourt granted the summary judgment motion as to 50% of the real property, i.e., the interest

attributable to Paul F. Moran, Jr. and Nancy Moran. As to the remaining 50% interest, the [trial c]ourt determined that a material issue of fact existed as to whether Marie Moran had actually signed the mortgage.

As to the Russells, the [trial c]ourt provided the following analysis as it related to the present mortgage foreclosure action:

> The Russell[s] essentially have the same liability, if any, as Moran because they took their interest in the real property through a consentable line agreement with Moran. As noted before, the liability relates to the property itself, not the Russell[s] personally. At this point, the record demonstrates that there is no[] genuine issue of material fact relating to a valid mortgage lien on a 50% interest in the real property. As such, summary judgment will be granted against the Russell[s] as well in connection with this 50% interest.

[Trial Court Opinion, 6/3/2016,] at 9 n.5[]. As to the remaining 50% interest in the real property, the [trial c]ourt scheduled a judge trial to determine whether or not Marie Moran executed the mortgage.

On November 29, 2016, the [trial c]ourt entered an order scheduling a [bench] trial for February 27, 2017. On February 22, 2017, Osprey filed an "emergency" motion seeking a continuance of the [bench] trial based upon its concern that Marie Moran did not plan on appearing for the [bench] trial. On February 23, 2017, the [trial c]ourt granted the "emergency" motion, established a schedule for filing motions *in limine* relative to the use of Marie Moran's deposition testimony in the event that she failed to appear for trial, and scheduled argument on the motions *in limine* for April 27, 2017. The [trial c]ourt also continued the [bench] trial to June 2, 2017.

Osprey filed a motion *in limine* seeking to preclude the use of the deposition testimony of Marie Moran in the event that Marie Moran failed to appear at the trial. Thereafter, at the April 27, 2017 argument on Osprey's motion *in limine*, it was represented to the [trial c]ourt that Marie Moran intended upon being present

- 4 -

and testifying at the [bench] trial.  As such, the motion *in limine* was dismissed as moot.

Despite the fact that the litigation was still pending as to whether the remaining 50% interest in the real property had a valid mortgage upon it, Osprey proceeded with execution on the 50% interest for which summary judgment was granted.  On August 25, 2016, Osprey filed for a writ of execution, and a [s]heriff's [s]ale was scheduled for January 10, 2017 at 10:30 a.m.  On January 6, 2017, the Russells filed a petition for stay of the writ of execution pursuant to Pennsylvania Rule of Civil Procedure 3183.  The Russells contended that they had acquired title through adverse possession to a portion of the subject real property prior to the execution of the mortgage in 1994.  On January 9, 2017, the [trial c]ourt stayed the January 10, 2017 [s]heriff [s]ale and scheduled argument for February 7, 2017, which was later continued to March 21, 2017.  After an argument on the petition seeking a stay of the [s]heriff [s]ale, the [trial c]ourt granted the stay to allow the Russells to pursue their adverse possession claim as to the portion of the real property for which they were asserting they had acquired ownership prior to 1994.  The Russells were directed to file their adverse possession complaint within 30 days and they have now complied with that directive.

Trial Court Opinion, 5/12/2017, at 1-7 (footnotes and some citations omitted).

Osprey timely filed a notice of appeal from the order staying the sheriff's sale, and both Osprey and the trial court complied with Pa.R.A.P. 1925. Osprey presents this Court with five questions for review, all of which challenge the stay of the sheriff's sale.

1. Whether the trial court committed an error of law and a clear abuse of discretion by indefinitely staying a sheriff's sale based upon the unproved factual allegations of [the Russells] that they acquired the property to be sold by adverse possession, when the court had already, at least impliedly determined that the property was security for the mortgage held by [Osprey], the trial court had already dismissed the Russells' quiet title claim with prejudice, and any claim that the Russells owned the

property by adverse possession before the mortgage at issue in this case was executed is totally meritless/frivolous?

2. Whether the trial court committed a clear abuse of discretion and erred as a matter of law by staying the sheriff's sale in this case when there was no valid equitable or legal basis presented by the facts of this case, when taking into consideration the rights of the parties and facts of record, that would have justified staying the sale?

3. Whether the trial court committed a clear abuse of discretion and erred as a matter of law by staying the sheriff's sale when there was no proved facts of record that would entitle the Russells to the relief sought and when the court failed to hold an evidentiary hearing on the Russells['] petition to stay before granting the petition to stay?

4. Whether the trial court committed a clear abuse of discretion and erred as a matter of law by staying the sheriff's sale scheduled in this matter when the relief sought by the Russells, which is the basis for the Russells seeking a stay, would be barred by the doctrine of *res judicata*?

5. Whether the trial court committed a clear abuse of discretion and erred as a matter of law by staying the sheriff's sale indefinitely when granting the stay totally ignores the rights of [Osprey], the costs incurred by [Osprey], and is contrary to the equities?

Osprey's Brief at 4-5 (numbering added; unnecessary capitalization and suggested answers omitted).

Before we reach the issues presented by Osprey on appeal, we must first determine whether we have jurisdiction over this appeal.[1] It is well-settled that this Court has jurisdiction over final orders. The definition of a

---

[1] Appellees argue that this appeal should be quashed because the order appealed from is interlocutory. Application to Quash Appeal, 11/1/2017, at 2 (unnumbered).

- 6 -

final order is provided in Rule 341 of the Pennsylvania Rules of Appellate

Procedure. "Rule 341 is fundamental to the exercise of jurisdiction by this

[C]ourt." *Prelude, Inc. v. Jorcyk*, 695 A.2d 422, 424 (Pa. Super. 1997) (*en*

*banc*). Rule 341 provides in relevant part as follows:

> **(b)** **Definition of final order**.--A final order is any order that:
>
> > (1)   disposes of all claims and of all parties; or
> >
> > (2)   RESCINDED
> >
> > (3)   is entered as a final order pursuant to paragraph (c) of this rule.
>
> (c)   **Determination of finality**.--When more than one claim for relief is presented in an action, whether as a claim, counterclaim, cross-claim, or third-party claim or when multiple parties are involved, the trial court or other government unit may enter a final order as to one or more but fewer than all of the claims and parties only upon an express determination that an immediate appeal would facilitate resolution of the entire case. Such an order becomes appealable when entered. In the absence of such a determination and entry of a final order, any order or other form of decision that adjudicates fewer than all the claims and parties shall not constitute a final order.

Pa.R.A.P. 341. *See also* 42 Pa.C.S. § 742 ("The Superior Court shall have

exclusive appellate jurisdiction of all appeals from final orders of the courts of

common pleas….").

Here, the order appealed from stayed the execution of a sheriff's sale.

> Typically, an order staying execution is deemed interlocutory, and, therefore, unappealable because it is granted to maintain the *status quo* pending the further disposition of other court proceedings or investigations. An order staying execution becomes final and appealable, however, if granted for an indefinite duration. Therefore, the finality and appealability of a stay order

- 7 -

depends either upon the duration of the order or the reason for which it was entered.

***Valley Forge Ctr. Assocs. v. Rib-It/K.P., Inc.***, 693 A.2d 242, 244 (Pa. Super. 1997) (internal citations omitted).

> [W]hether or not a stay of execution is "final" and, therefore, appealable depends upon the reason for which it was ordered.
>
> When execution has been stayed because the defendant alleged that other litigation was pending in which he might establish a countervailing property right against plaintiff it has been held that the execution was stayed "indefinitely" and was, therefore, appealable.

***Cherry v. Empire Mut. Ins. Co.***, 208 A.2d 470, 471 (Pa. 1965) (citations omitted).

A close examination of the language of the order involved herein reveals that the stay is for an indefinite duration.

> [T]he sheriff's sale is stayed to allow [the Russells] to file a complaint asserting adverse possession of the subject real property. The Complaint shall be filed within thirty days of today's date. In the event that [the Russells] fail to file a complaint, Osprey [] may petition the court to reinstate the sheriff's sale and proceed with execution.

Order, 3/21/2017 (unnecessary capitalization and parenthetical repetition of numbers omitted).

Because the Russells have filed a complaint, the sheriff's sale will be stayed indefinitely pending final disposition of that case and the filing of a petition to reinstate the sheriff's sale. Thus, the order is final and appealable, and the Russells' motion to quash is denied.

We now address the merits of Osprey's claims. We begin our review with the applicable legal principles.

A trial court may stay execution upon application of a party in interest if the party demonstrates "any other legal or equitable ground" to support a stay. Pa.R.C.P. 3183.

> It is an equally accepted principle that a court in which an execution proceeding is pending has the inherent power to stay the proceeding upon legal or equitable grounds, when it is necessary to protect the rights of a party. A court should not stay execution unless the facts of the case warrant such an exercise of discretion, which judgment requires balancing the rights of the creditor and debtor.

*City of Easton v. Marra*, 862 A.2d 170, 174–75 (Pa. Cmwlth. 2004) (internal citations omitted). "On review, an appellate court will not disturb a trial court's determination absent a clear abuse of discretion or error of law." *Id.* at 172 n.1.

Here, the Russells, a party with an interest in the subject property, demonstrated legal and equitable grounds to support a stay. Specifically, those grounds are whether they obtained ownership of their portion of the subject property through adverse possession prior to the Morans' execution of the 1994 mortgage. We find no abuse of discretion in the trial court's decision to stay execution pending resolution of this claim.

The trial court provided two distinct bases for granting the stay.

> (1) [T]he imprudent decision by Osprey to proceed with execution on only a 50% interest where such a partial execution upon an interlocutory order would negatively impact upon the value

received at any [s]heriff [s]ale and thereby adversely impact upon Moran and effectively divest Moran and the Russells of their direct appellate rights; and (2) the Russells' outstanding adverse possession claim as to a portion of the real property.

Trial Court Opinion, 5/12/2017, at 8 n.6. In reaching its decision to stay execution, the trial court noted that the pending trial to determine whether Moran signed the mortgage will impact the execution of the subject property. If the court finds that Moran never signed the mortgage,

the end result would be that [] Moran would remain the owner of 50% of the real property free and clear (as well as the Russells owning a 50% interest[2] in their portion of the real property free and clear) and the purchaser at the [s]heriff [s]ale (which in all probability will be Osprey) being the owner of the other 50% interest. Thereafter, the parties would have to engage in another legal proceeding to partition the real property.

*Id.* at 9. The parties will be faced with this same scenario if it is determined that the Russells took possession of a portion of the subject property by adverse possession prior to 1994. On the other hand, if the trial court finds that Moran did sign the mortgage, then Osprey would have to initiate a second foreclosure proceeding to execute on the remaining 50% interest in the subject property. *Id.* at 9-10.

Finally, the trial court found that

---

[2] Though the trial court refers to the Russells' portion as a 50% interest, the actual portion of the subject property that is owned by the Russells is in dispute, and should be resolved by the pending adverse possession case. If the Russells obtained their portion of the subject property through the consentable line agreement, then their interest is 42% (0.14 acres of the 0.33 acres subject property). However, if the Russells obtained their portion through adverse possession, then their interest may be a different percentage.

> Osprey's decision to seek execution on a partial interest in real property while title to the remaining interest is still in litigation speaks to a more sinister motivation, namely to use the execution process not as a means to satisfy the debt owed on the mortgage, but as leverage to extort a settlement out of Moran or the Russells in a manner that would undercut the due process that both Moran and the Russells are entitled to receive relative to the ownership of this real property. Th[e trial] court has a responsibility to assure that the execution process itself is not used for abusive purposes. ***See Unity Sav. Ass'n. v. Am. Urban Scis. Found., Inc.***, 487 A.2d 356, 359 (Pa. Super. [] 1984) ("It is the trial court's responsibility to see that the execution process is not abused.").

*Id.* at 12 n.11.

It is clear from the record that the trial court balanced the rights of Osprey and the Russells in considering whether to grant the request to stay the sheriff's sale. The trial court found equitable and legal grounds to grant the stay until after resolution of both the adverse possession claim and the pending trial. This decision was not an abuse of discretion.

Osprey additionally claims that the trial court erred in staying execution because the Russells' adverse possession claim is precluded by *res judicata*.

> Under the doctrine of *res judicata*, or claim preclusion, a final judgment on the merits by a court of competent jurisdiction will bar any future action on the same cause of action between the parties and their privies. The doctrine therefore forbids further litigation on all matters which might have been raised and decided in the former suit, as well as those which were actually raised therein. Similarly, [t]he doctrine of collateral estoppel or issue preclusion prevents a question of law or an issue of fact that has once been litigated and fully adjudicated in a court of competent jurisdiction from being relitigated in a subsequent suit.

- 11 -

***Mariner Chestnut Partners, L.P. v. Lenfest***, 152 A.3d 265, 286 (Pa. Super.

2016) (internal citations and quotation marks omitted).

Osprey argues that the dismissal of the Russells' quiet title counterclaim

precludes the Russells' adverse possession claim. However, where, as here,

the underlying mortgage foreclosure action remained pending after dismissal

of the counterclaim, the order dismissing the counterclaim is not a final order.

***See Cont'l Bank v. Andrew Bldg. Co.***, 648 A.2d 551, 554 (Pa. Super. 1994)

(stating that where "the order of the trial court dismissed Andrew's

[] counterclaim, but the mortgage foreclosure action, the initial action,

remained pending[, the] order is not appealable as a final order") (citing

Pa.R.A.P. 341, Note). Accordingly, *res judicata* does not apply, and the

Russells are not barred from raising the adverse possession claim.

Finally, Osprey claims that it is entitled to relief because the trial court

did not conduct an evidentiary hearing. The trial court provided the following

response.

> If [Osprey] believed that an evidentiary hearing was necessary, it
> had more than ample time to make a request for an evidentiary
> hearing. Moreover, this is not a circumstance where the court was
> unaware of the underlying facts involved in this action. The court
> previously issued a written opinion on [Osprey's] summary
> judgment motion and a judge trial has been scheduled relative to
> the issue of whether Marie Moran signed the mortgage itself.
> Given that the court was already familiar with the facts of this
> case, there was no need whatsoever for an evidentiary hearing
> and [Osprey] has not identified what, if any, record needed to be
> further developed prior to a decision on the petition for a stay of
> the execution.

- 12 -

Trial Court Opinion, 5/12/2017, at 10 n.8.  We agree.

After reviewing the record, we find no reason to disturb the trial court's order.

Motion to quash denied.  Order affirmed.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary

Date: 2/16/2018